h MARVIN, Chief Judge.
Having been employed by two different employers [at a bank for whom he worked 40 hours a week at $6.50 an hour or $260 a week, and at UPS for whom he worked at $10.10 an hour averaging about 17.2 hours or $173.82 a week] and having suffered a disabling injury on the UPS job, the claimant appeals a judgment of the Workers’ Compensation Hearing Officer rejecting his demands to reinstate the Supplemental Earnings Benefits which had been paid him by UPS and to have the SEB calculated on the basis of his average monthly wages from both jobs. Claimant continued to work for the bank after his injury.
UPS had paid claimant temporary total disability benefits for about six weeks following the January 27, 1994, injury, and the SEB thereafter, calculated solely on his UPS wages, before terminating the SEB in June 1994. Relying on LRS 23:1021(10)(a)(iv)(bb) and 1221(3), UPS said it terminated the SEB because the claimant was able to earn, and had earned, wages from the bank that were equal to 90 percent of his UPS wages. The WCHO agreed.
Disagreeing with the WCHO’s interpretation of the law, and determining that the record lacks a factual finding necessary for resolution of the SEB reinstatement demand, we reverse and remand.
DISCUSSION
Relying on § 1221(3) and subpart (aa) of subsection (10)(a)(iv) of § 1021, the claimant, Phillips, argues for reinstatement of SEB payments until he is able to earn 90 percent of the combined wages he was earning from both jobs, bank and UPS, when he was injured. We shall hereafter simply refer to the respective subpart of § 1021(10)(a)(iv) upon which each litigant relies, either aa or bb.
The SEB is provided to an employee whose injury results in him being unable to earn wages equal to 90 percent of his wages at the time of injury. The benefit is 66¾ percent of the difference between his average monthly wages at \fthe time of injury and the average monthly wages he earns or is able to earn thereafter. § 1221(3). That section, originally enacted in 1983, mandates that average monthly wages shall be computed as 4.3 times the weekly wages as defined in§ 1021(10). Neither statute explicitly limits computation of the average wages, whether weekly or monthly, to the wages earned in the employment in which the employee was injured, as does the workers’ compensation law of some other states. See Malone & Johnson, Workers’ Compensation Law and Practice, 14 Louisiana Civil Law Treatise (3d ed. 1994), § 325 at p. 104.
As explained in Chapter 15, §§ 321-328, Malone-Johnson, wage calculation issues, historically, have given “difficulty everywhere” because some employees moonlight, holding successive employments or working for joint employers, some work more or less than 40 hours per week, by order or by choice, and some employees are paid piecemeal, while others are paid by the hour, day, week or month.
The law we have considered in this claimant’s appeal derives from statutes enacted or reenacted in 1983 [§ 1021(9), defining part-time employment and (10)(a)(i)-(iii), dealing with average weekly wage computations for workers paid by the hour]; in 1989 [§ 1031 B, distinguishing the right of action of a disabled worker who is employed jointly by two or more employers]; and in 1991 [subsections (iv) and (v) of § 1021(10)(a), providing for the determination of benefits for part-time and seasonal employees, repealing and reenacting the language of former § 1261, enacted in 1985].
In the 1991 act adopting the two specific subparts aa and bb in subsection 10(a)(iv) of § 1021, the legislature obviously considered the problems that had arisen when a part-time employee works in successive employments for two or more employers, and the benefits to which he is entitled for a compen-sable injury,_j3and, in part, the wages on which the benefit is based. See Malone- *1377 Johnson, Chapter 15. We quote and emphasize the language in subsection (iv):
A part-time employee, as defined in R.S. 23:1021(9) and who is employed by two or more different employers in two or more successive employments, shall be entitled to receive benefits as follows:
(aa) If an employee is employed by two or more different employers in two or more successive employments and the employee incurs a compensable injury under the provisions of this Chapter in one of the employments, the employer in whose service the employee was injured shall pay the benefits due the employee as provided in this Chapter.
(bb) If the employee is a part-time employee in one of the successive employments, is injured in that employment, but as a result of the injury also incurs loss of income from, other successive employments, that employee shall be entitled to benefits computed by determining wages under the provisions of this Subsection using his hourly rate in employment at the time of injury and using the total hours worked for all employers of the part-time employee, but not to exceed his average, actual weekly hours worked or forty hours weekly, whichever is less.
Subpart aa clearly obligates the employer in whose service a part-time employee in successive employments suffers a compensable injury, to pay the benefits due the employee os provided in this chapter, Chapter 10 of Title 23, the w.c. law. The benefits that are due the part-time employee in such a circumstance are provided in § 1221 of Chapter 10.[1] Section 1221(3), the 1983 statute, bases the SEB on the average monthly wages of the employee as defined in R.S. 23:1021(10). Neither § 1221(3) nor § 1021(10) clearly states whether the average monthly wages of a part-time employee injured in that successive employment who is full-time in the other successive employment are to be considered his combined wages, or only the wages paid by the part-time employer in whose service he was injured.
Subpart aa speaks only of benefits being due the successive employee in such circumstances, but does not qualify the benefits due by limiting the wages on Uwhich the benefits are based to the average, actual weekly hours worked or forty hours weekly, whichever is less, as does subpart bb. Compare § 1021(10)(a)(iii).
Professor Johnson suggests that the legislature attempted to deal with successive employment — whether full-time or part-time— in a comprehensive manner in 1991 by enacting subsection (iv) which contains the sub-parts aa and bb. Without drawing the distinction between the employment disability (one or both jobs?) as the subparts seem to do, Professor Johnson concludes that a part-time worker in one of the successive employments is entitled to benefits by determining his wages on an hourly basis in the employment in which he was injured and the total hours worked for all employers — but not to exceed his average actual hours worked or JO hours weekly, which is less. Malone-Johnson, § 325, pp. 110-111. The LABI Workers’ Compensation Deskbook’s analysis of the bb language, originally enacted in 1985, is similar to Professor Johnson’s. See Part IIA, pp. IIA-2 and 3 (1992 ed.).
While considering Professor Johnson’s suggestion and respecting his experience and intellect, we have concluded that the legislature’s attempt leaves very much to be desired by the WCHOs and the courts, and by employers and employees in the respective positions of UPS and Phillips. We shall attempt, we hope in a clearer way than the legislature’s attempt, to further explain our application of the accepted rules of statutory *1378 interpretation to the statutes under consideration.
ANALYSIS
Phillips is not in the circumstance expressly provided in subpart bb. His injury in his part-time successive employment disabled him in that employment, but not in his full-time employment for the bank.
Considering the w.c. statutes together and fairly construing and giving Ismeaning to subsection (10)(a)(iv) and its subparts, aa and bb, we reach this conclusion: Subpart bb applies when the injury sustained in one successive employment disables the employee from performing work for that employer and for his other employer(s), while aa applies to successive employees, like Phillips, when the injury and resulting disability occur in the service of one successive employer, but not the other. This conclusion does not, however, answer the wages basis upon which the SEB is calculated.
In the aa part-time circumstance, which we have concluded exists here, the SEB calculation formula is no different for a worker in successive employments than for a part-time worker in a single employment:
For injury resulting in the employee’s inability to earn wages equal to ninety percent or more of wages at the time of injury, ... [66%] percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment ... Average monthly wages shall be computed as four and three-tenths times the [average weekly] wages as defined in R.S. 23:1021(10).
LRS 23:1221(3)(a). Our emphasis and brackets.
The litigants stipulated to Phillips’ average weekly wages at the time of his injury: $260 from his bank job and $173.82 from UPS, for a combined average weekly wage of $433.82. His average monthly earnings are easily computed as 4.3 times those respective amounts, or $1,118.00 from the bank and $747.42 from UPS, totaling $1,865.42. After his work injury, Phillips earned only the $1,118 average monthly amount from the bank.
Because subpart aa does not qualify or limit how the wages basis is to be made to calculate the SEB benefit mandated by § 1221(3) for an employee in Phillips’ circumstance, we conclude the calculation may be made in either of two ways: Either by including the bank earnings and comparing his combined prejaccidentf, earnings from both jobs ($1,865.42) to his post-accident earnings from the bank ($1,118.00), or by excluding the bank earnings and comparing his pre-accident earnings from UPS alone ($747.42) to his part-time earnings after the injury (-0 — ). We shall not attempt to speculate on a subpart bb calculation.
If we make the first comparison [combining both wages], we use the bank wages [$1,118], before and after [B + UPS: B]. If we make the second comparison [using only the part-time UPS wages], we exclude the bank wages, before and after. Mathematically, the result is the same:
Combined UPS only
Pre-accident $1,865.42 $ 747.42
Post-accident -1,118.00 - 0.00
Difference $ 747.42 $ 747.42
In either example, the post-accident earnings are less than 90 percent of the pre-accident earnings, entitling Phillips to SEB payments from UPS based on the part-time UPS wages Phillips earned before but not after his injury at the UPS job. When UPS paid Phillips the SEB benefit, it calculated the benefit on the basis of the second comparison. After about five months, UPS determined to compare only his pre-accident UPS wages with his post-accident bank wages to conclude he was able to earn 90 percent of his pre-accident wages.
To accept the UPS argument that Phillips’ pre-accident part-time earnings from UPS should be compared with his post-accident *1379 full-time earnings from the bank to defeat his entitlement to the SEB would achieve an anomalous result, perhaps absolving UPS from owing Phillips any w.c. benefits at any time, even for the period immediately after his injury. Such a result was among the problems the legislature attempted to correct by the 1985 amendments [former § 1261] adopting the language of subsection (iv) of § 1021(10)(a) after the 1983 legislation was ^criticized by Professor Johnson and other scholars. See Malone-Johnson, § 325.
Our search for reported cases squarely interpreting subsection (iv) has led us to the same conclusion reached by Professor Johnson in the 1994 edition and supplements to his treatise: “[T]here are no interpretive decisions.” Each litigant relies on or attempts to distinguish such cases as Jones v. Orleans Parish School Bd., 370 So.2d 677 (La.App. 4th Cir.1979); Lott v. Louisiana Power & Light Co., 377 So.2d 1277 (La.App. 3d Cir.1979), writ denied; Casby v. Aurora Country Club, 503 So.2d 166 (La.App. 4th Cir.1987), writ not considered; Gray v. Church’s Fried Chicken, Inc., 504 So.2d 979 (La.App. 1st Cir.1987); and Dumas v. Hartford Ins. Co., 583 So.2d 31 (La.App. 4th Cir.1991). Because these cases interpret the pre-subsection (iv) law, they merely focus our attention on the problems traditionally raised in wage basis w.c. cases but do not control our resolution of the specific issue in this particular appeal.
CONCLUSION
The issue raised by Phillips, here and below, is whether he is entitled to SEB after the date of termination of his benefits by UPS (June 1994). UPS advanced two grounds for its termination of the SEB payments to Phillips, one being the fact that he was earning more than 90 percent of his UPS wages from his position with the bank, and the other being the availability of part-time jobs with other local employers, within Phillips’ medical restrictions, that would bring his combined earnings over the 90 percent threshold.
The matter was tried before the WCHO solely on documentary evidence, including the UPS job market survey and Phillips’ affidavit, which states in part that he contacted each prospective employer listed on the survey and “was informed ... that the jobs were either unavailable or did not exist.” Without squarely reaching or resolving the factual conflict in this respect, and apparently in |8reliance on the comparison of Phillips’ UPS wages with his bank earnings, the WCHO simply concluded that UPS “properly calculated and paid the benefits owed Mr. Phillips,” and dismissed Phillips’ claim for reinstatement of the SEB.
As we have explained, Phillips’ bank wages must either be included in, or excluded from, both portions of the pre- and post-accident wage comparison. The comparison of Phillips’ continuing full-time bank wages after the injury with his part-time UPS wages before the injury is not a valid basis for terminating the SEB in June 1994.
The SEB reinstatement claim thus hinges on the factual determination whether a part-time job was available to Phillips, within his medical restrictions and from which he could have earned enough to bring his combined wages to at least 90 percent of their pre-accident level, when the SEB was terminated in June 1994. Because it is unclear from this record whether and to what extent the WCHO considered and resolved the factual conflict concerning job availability, we must reverse the judgment dismissing the claim for SEB reinstatement and remand the matter for further proceedings on that issue.
DECREE
The judgment of the WCHO dismissing the claim for reinstatement of benefits is reversed and the matter is remanded for further proceedings consistent with this opinion. Costs of this appeal are assessed to UPS. Costs in the proceedings below, before and after remand, shall be assessed by the WCHO in the judgment rendered on remand.
REVERSED AND REMANDED.

. While the first paragraph before subparts aa and bb applies the subparts to a part-time employee as defined in § 1021(9) who is employed by two or more employers in successive employments, this claimant worked full-time for the bank and was a part-time employee only of UPS. The litigants do not argue, however, the inapplicability of the subparts, here or below, but instead argue the applicability of one or the other subpart. We do not address the issue of the definition problem.