746 So.2d 234 (1999)
CITY OF SHREVEPORT, Plaintiff-appellee,
v.
KINGWOOD FOREST APARTMENTS and Louisiana Workers' Compensation Corporation, Defendants-appellants.
No. 32,370-WCA
Court of Appeal of Louisiana, Second Circuit.
October 29, 1999.
*235 Egan, Johnson, Stiltner & Patterson by Thomas D. Travis, Baton Rouge, Counsel for LWCC and Kingwood Forest Apts.
Ronald F. Lattier, Shreveport, Counsel for City of Shreveport.
James R. Chrishon, Jonesville, W. James Singleton, Shreveport, Counsel for Verdis Hays.
Eskridge E. Smith, Jr., Bossier City, Counsel for Jo Ann Oliver.
Before NORRIS, CARAWAY and DREW, JJ.
CARAWAY, J.
As the result of two workplace accidents that combined to cause death, a policeman's survivors were ruled to be entitled to worker's compensation benefits from the City of Shreveport and another employer who employed the officer as a part-time security guard. Contending that the officer was an independent contractor or was not within the course and scope of his part-time employment when he died, the part-time employer brings this appeal. In the alternative, the appellant contests the allocation of liability for the worker's compensation benefits between the City and itself. Affirming the determination of liability on the part of both employers, we nevertheless amend the ruling of the worker's compensation judge regarding the contribution rights between the two employers.

Facts
This suit concerns the payment of worker's compensation death benefits to the heirs of Officer Christopher Hays ("Hays"). Hays was responding to a police radio call at Kingwood Forest Apartments ("Kingwood") on February 5, 1995, when he suffered bilateral pulmonary emboli. Officer Hays died as a result of the emboli. Hays was a police officer with the Shreveport Police Department ("SPD") and, on weekends, he worked as a security guard at Kingwood. In January 1995, Officer Hays incurred a deep rope burn during police training with the SPD. Dr. Ronzee Bridges performed a surgical debridement and skin graft on January 27, 1995, and instructed Hays to keep his right leg elevated.
The "rope burn" injury placed Hays on leave from the police department. However, he continued to provide services as a security guard to Kingwood. Hays was employed by Kingwood to deter unauthorized entry through the apartment complex's front gate. He worked Saturdays and Sundays between midnight and 6:00 a.m.
At approximately 4:22 a.m. on February 5, 1995, Hays was in his police car at the Kingwood front gate. Hays was monitoring his police radio and responded to a 911 report of a rape at the Kingwood complex, stating: "I have security here. Which apartment is it?" Upon climbing up a flight of stairs to respond to the 911 call, Hays suffered bilateral pulmonary emboli and died. Dr. George McCormick, the accepted expert in the field of forensic pathology, performed an autopsy on Hays. He concluded that massive blood clots formed in Hays' legs as a result of his *236 immobilization, and that these blood clots traveled to his lungs as he attempted to respond to the 911 call, causing massive pulmonary emboli which resulted in immediate death.
The City of Shreveport ("City") paid worker's compensation and death benefits to Hays' survivors. The City then brought this suit to transfer or share liability with Kingwood for all of the worker's compensation death benefits paid in the past, as well as for those benefits due in the future.
At the trial, in addition to the facts regarding the City's payment of benefits, the parties stipulated the following:
a. Hays was on duty as a security officer performing security services for Kingwood at the time of his death on February 5, 1995;
b. While at Kingwood on February 5, 1995, Hays responded to a rape call;
c. While attempting to respond to the rape call, Hays suffered pulmonary emboli; and
d. Before February 5, 1995, Hays sustained a rope burn on his right leg at the Shreveport Police Academy.
Following trial, the worker's compensation judge ("WCJ") listed the following findings of fact:
1. Hays was not acting as a police officer at the time of his death;
2. Hays was acting as an employee of Kingwood at the time of his death; and
3. The work accidents of January, 1995 and February 5, 1995, combined to cause Hays' fatal pulmonary emboli.
The WCJ then assigned each employer 50% liability for payment of Hays' death benefits based on the above findings of fact.
From this ruling, Kingwood and its insurer, Louisiana Workers' Compensation Corporation ("LWCC"), have appealed and list various assignments of error which we summarize as follows:
(1) Was the WCJ in error in finding that Hays was an employee of Kingwood, and not an independent contractor?
(2) Was the WCJ in error in finding that Hays was acting in the course and scope of his employment with Kingwood at the time of the accident and not as an SPD employee?
(3) Did the WCJ err in not apportioning the liability for worker's compensation benefits in proportion to the amount of wages paid by the City and Kingwood as joint employers pursuant to La. R.S. 23:1031?

Discussion
Initially, we note that any question of the multiple causation for Hays' death from the two accidents is not the subject of this appeal. Hays' rope burn accident while employed by the SPD and the sudden physical exertion which he expended in responding to the rape represent two events which combined together to cause his death thus making this case similar to the dual job accidents which contributed to the employee's death in Blount v. Cooper Stevedoring Co., 416 So.2d 358 (La.App. 4th Cir.1982), writ denied, 420 So.2d 457 (La.1982). The issues raised by Kingwood concern whether an employment relationship existed between Kingwood and Hays and, if so, the division of responsibility for the payment of the worker's compensation benefits between Kingwood and the City. Was Hays an employee or an independent contractor of Kingwood?
Kingwood argues that Hays was working as an independent contractor. Generally, independent contractors are excluded from coverage under the Louisiana Workers' Compensation Act. Riles v. Truitt Jones Const., 94-1224 (La.1/17/95), 648 So.2d 1296. On the other hand, employees in Louisiana are assured protection from work related injuries under the Act. La. R.S. 23:1021, et seq., and Riles, supra. Pursuant to La.R.S. 23:1044, "A person rendering service for another in *237 any trades, businesses, or occupations covered by this Chapter is presumed to be an employee under this Chapter." Since Hays was providing security services for Kingwood, and Kingwood's "business" is not excluded from coverage, Hays is presumed to be an employee of Kingwood. The burden was therefore on Kingwood to overcome the presumption of employment and demonstrate that Hays was acting as an independent contractor.
The distinction between employment and independent contractor relationships was examined in the case of Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385 (La.1972). In that case, a negligent truck driver was asserted to be an independent contractor for a trucking firm. The truck driver owned and maintained the truck. Yet, he was directed by the firm in his work as to the order of deliveries. He was required to report to work at the trucking terminal on a continuous daily basis, and he had performed those services for over ten years. In finding that the truck driver was not an independent contractor, the supreme court stated:
It is well understood by the courts of this State that the term independent contractor connotes a freedom of action and choice with respect to the undertaking in question and a legal responsibility on the part of the contractor in case the agreement is not fulfilled in accordance with its covenants. The relationship presupposes a contract between the parties, the independent nature of the contractor's business and the nonexclusive means the contractor may employ in accomplishing the work. Moreover, it should appear that the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction, in the performance of the service, of his employer, except as to the result of the services to be rendered. It must also appear that a specific price for the overall undertaking is agreed upon; that its duration is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach. (Citations omitted.)
The law further recognizes that inquiry to determine whether a relationship is that of independent contractor or that of mere servant requires, among other factors, the application of the principal test: the control over the work reserved by the employer. In applying this test it is not the supervision and control which is actually exercised which is significant, the important question is whether, from the nature of the relationship, the right to do so exists.
* * *
This right to terminate the relationship without cause, where no term of employment is prescribed, is characteristic of the master and servant or employer-employee relationship. The right is at the same time antagonistic to the independent contractor relationship.
Id. at pp. 390-391.
Although the Hickman analysis did not involve a worker's compensation dispute, its statement of the law is mirrored in the definition for independent contractor in the Workers' Compensation Act. La. R.S. 23:1021(6)[1]. In a recent worker's compensation case, Riles, supra, the court employed the Hickman analysis after citing *238 the definition for independent contractor in the Act.
In reviewing determinations of the hearing officer, the standard of review is the manifest error or clearly wrong standard. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706; Collins v. General Motors Corp., 31,782 (La.App.2d Cir.3/31/99), 736 So.2d 947. Furthermore, each case must be decided on its own particular facts, taking into consideration the total economic relationship between the parties and the various factors weighing for or against a finding of an employment relationship. Sones v. Mutual of Omaha Ins. Co., 272 So.2d 739, 742 (La.App. 2 Cir.1972), application denied, 273 So.2d 292 (La.1973).
Hays' duties at Kingwood required him to be stationed at the front gate to deter any unauthorized entry into the apartments. He was provided a roll sheet of the tenants and a log to record the names of guests and to list license plate numbers. He was expected to provide two six-hour watches at designated times during the weekend and return the roll sheet and log on Monday. His tasks were uncomplicated and required no supervision. In the event of a disruptive party or a crime, his training as a police officer equipped him to act. He could quit or be relieved of his position upon thirty days notice.
Kingwood insists that Hays was an independent contractor because of his broad freedom to perform these tasks. He was not required to check in and out to another Kingwood employee at the start and finish of his work. He was free to have a substitute take his place at the front gate. The position did not require a police officer to perform the tasks. He was paid $10 per hour without any employment deductions.
From our review of Hays' relationship with Kingwood, we agree with the WCJ that he was an employee. While Hays' position was part-time with no direct supervision, there is an absence of a specific undertaking or piecework to be performed within a specific time. Hays' minimal duties were nonetheless subject to Kingwood's control by the specific hours he was expected to work and by the recordings he was required to log. If he was lax in those duties, Kingwood's tenants could have reported any disruptive conduct by unregistered intruders, thus giving rise to or resulting in his reprimand or firing. Most significantly, since the relationship was at-will, his failure to act would not constitute a breach of contract with corresponding liability. Kingwood's remedy for Hays' non-performance would be his dismissal from employment. Accordingly, we find that Hays was an employee of Kingwood at the time of his death.

Was Hays in the course and scope of his employment with the SPD?
Kingwood next argues that on the morning of the accident, Hays was wearing police attire, utilizing police equipment (including a weapon), displaying a badge, sitting in a police car, monitoring a police radio, and responding to a police radio call. As such, Kingwood contends that Hays responded to the 911 call in his capacity as a Shreveport police officer. Additionally, Kingwood asserts that its manager testified that responding to calls or emergencies away from the front gate was outside the scope of Hays' limited employment duties. Lastly, Kingwood notes La. R.S. 23:1034.1[2] which seems to contemplate that an off-duty police officer who is injured while performing any law enforcement action within this state is entitled to compensation, and by implication, that the *239 action is in the course of and arising out of employment as a policeman.
From our ruling above, Hays was an employee of Kingwood, and at the time of his death, he was on the job earning an hourly wage. The fact that Hays was in his SPD uniform and utilizing police equipment was an accepted practice which inured to Kingwood's benefit by providing a visible showing of security for the apartment complex. The use of the SPD uniform and equipment did not diminish Kingwood's obligation to pay wages to Hays and does not affect its obligation to pay benefits under the Act.
The fact that Hays left his station at the front gate is likewise of no consequence. His duty was to deter unauthorized intruders which included the possibility that an intruder might make his way past the front gate area, thereby causing Hays to act. In any event, any employee of the apartment complex with knowledge of an emergency situation affecting an apartment resident would be expected to go to the aid of the resident. An injury to the employee responding under such unusual circumstances would nevertheless be within the course and scope of employment.
Finally, La. R.S. 23:1034.1 does not address or negate the possibility of worker's compensation liability being attributable to two employers of a law enforcement officer for injuries caused by multiple workplace accidents. As seen by the next discussion, the jurisprudence allows for solidary liability of multiple employers for the payment of worker's compensation benefits.

What are the contribution rights between the employers?
The WCJ's judgment held the City and Kingwood solidarily liable to Hays' survivors and held that the City was entitled to contribution from Kingwood for 50% of the worker's compensation benefits paid or to be paid to Hays' survivors. The finding of solidary liability is in accordance with the jurisprudence in ruling on cases involving liability for multiple employers in various settings. See, Gales v. Gold Bond Building Products, 493 So.2d 611 (La.1986) and cases cited therein. In its alternative assignment of error, while not disputing the solidary obligation, Kingwood contends that the contribution rights between the City and Kingwood for the payment of benefits should be determined under the rule of La. R.S. 23:1031(B) for joint employers.
Section 1031(B) addresses the contribution rights between multiple employers for a joint employment setting, as follows:
In case any employee for who injury or death payments are due is at the time of the injury, employed and paid jointly by two or more employers subject to the provisions of this Chapter, such employers shall contribute to such payments in proportion to their several wage liabilities to the employer.
While we disagree with Kingwood's argument that the City and itself were joint employers as contemplated by this provision, we find by analogy that the allocation method for the Act's liability imposed on these employers in this multiple accident setting should be the same.
The Louisiana Supreme Court in Kahl v. Baudoin, 449 So.2d 1334 (La.1984) held that joint employment requires a common enterprise that contemplates control of the worker for the common benefit of the interested employers. Casby v. Aurora Country Club, 503 So.2d 166 (La.App. 4th Cir.), writ not considered 506 So.2d 1219 (La.1987), and reconsideration denied by 508 So.2d 82 (La.1987). Such is not the case before us. The facts of this case fall under what the Act refers to as successive employment. La. R.S. 23:1021(10)(a)(v); see also, Malone & Johnson, Worker's Compensation, 13 Louisiana Civil Law Treatise § 60 and § 325 (1994). In this case, Hays was not performing work for both employers at the time of a single accident.
*240 Nevertheless, as seen by the supreme court's ruling in Gales, supra, the division of the Act's liability for benefits between multiple employers who are solidarily bound to an employee by operation of law need not follow the contribution rule for virile portions absent a consideration of the employers' relationship and their responsibilities under the Act. In this case, the two employers' relationship is directly analogous to a joint employment setting where both employ the employee and the benefits for the injury or death are derived from "their several wage liabilities." Although there was not a single accident arising out of a common enterprise, there were two accidents which linked the employers together to make them responsible for benefits which could be calculated from the aggregate of their weekly wages paid to Hays.[3] Accordingly, the legislative rule for the apportionment of liability under Section 1031(B) for joint employers is likewise a fair allocation of the employers' contribution rights in this case.
From our review of the record and of the parties' trial stipulation regarding the amount of benefits paid to Hays' survivors, we conclude that the proper apportionment should be made on the basis of the City's average weekly wage of $630.81 and Kingwood's average weekly wage of $120. Therefore, Kingwood's contribution to the City for the benefits paid to the Hays' dependents shall be 16% ($120 ÷ $750.81).

Conclusion
The judgment of the lower court is hereby amended to reflect our holding herein. It is hereby ordered, adjudged and decreed that the City is entitled to contribution from Kingwood and its insurer, LWCC, for 16% of all payments made to or on behalf of the Hays heirs, as well as 16% of all payments made to or on behalf of the Hays heirs in the future. The judgment in all other respects is affirmed. Kingwood is hereby ordered to pay 50% of the costs of this appeal, and the City is hereby ordered to pay $529.95 for costs of this appeal pursuant to La. R.S. 13:5112.
AFFIRMED AS AMENDED.
NOTES
[1] La. R.S. 23:1021(6) defines independent contractor. "`Independent contractor' means any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished, and are expressly excluded from the provisions of this Chapter unless a substantial part of the work time of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter."
[2] La. R.S. 23:1034.1 states: "Any law enforcement officer employed by any municipality, who, while on or off duty, and outside his jurisdiction, but within the State of Louisiana, performs any law enforcement action and is injured shall be entitled to the provisions for compensation as provided herein and shall be paid such workers' compensation benefits by the municipality by which he is employed."
[3] We note that the death benefits to Hays' dependents as stipulated by both employers were paid at the maximum benefits rate. The maximum rate would have resulted solely because of the amount of wages Hays received in his full-time employment with the City without the need to include the small part-time wages paid by Kingwood. The amount of benefits would have been less than the maximum had Hays' death resulted solely from a single work related accident in Kingwood's employment. Cf., La. R.S. 23:1231, 23:1202, and 23:1021(10)(a)(iv)(bb).