STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2025 CA 0294

LARRY NED

VERSUS

CITY OF BATON ROUGE/PARISH OF EAST BATON ROUGE

Judgment Rendered: **DEC 1 9 2025**

* * * * *

ON APPEAL FROM
THE OFFICE OF WORKERS' COMPENSATION, DISTRICT 5
IN AND FOR THE PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA
DOCKET NUMBER 19-05009

HONORABLE PAULA MURPHY,
WORKERS' COMPENSATION JUDGE PRESIDING

* * * * *

Andrew C. Blasini
John J. Rabalais
Joshua B. Couvillion
Covington, Louisiana

Attorneys for Defendant-Appellant
City of Baton Rouge/Parish of
East Baton Rouge

Ted Williams
Baton Rouge, Louisiana

Attorney for Plaintiff-Appellee
Larry Ned

**BEFORE:  MILLER, EDWARDS, AND FIELDS, JJ.**

**FIELDS, J.**

In this workers' compensation proceeding, employer, City of Baton Rouge/Parish of East Baton Rouge (City/Parish), appeals a judgment awarding employee, Larry Ned, supplemental earnings benefits (SEBs). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On September 20, 2017, Mr. Ned was employed as a police officer with the Baton Rouge Police Department (BRPD) when he was involved in a motor vehicle accident while operating his squad car, resulting in disabling injuries. The accident occurred after Mr. Ned's full-time employment with the BRPD was completed for the day, but prior to the start of his "extra-duty" detail.[1] The accident was deemed compensable under the Louisiana Workers' Compensation Act (LWCA), and Mr. Ned received indemnity and medical benefits from City/Parish. In October 2018, Mr. Ned was released by his physician to full-time employment with light-duty restrictions. It is the policy of the BRPD that an officer with light-duty restrictions may not work extra-duty detail.

On August 6, 2019, Mr. Ned filed a disputed claim for compensation, asserting that he was entitled to SEBs from October 15, 2018 to the present. City/Parish answered the claim, admitting to Mr. Ned's original compensable injury and his return to work status.

On or about April 30, 2024, City/Parish filed an unopposed motion to set this matter for a trial on the briefs. City/Parish referenced a prior telephone status conference held with the Workers' Compensation Judge (WCJ), during which the parties represented that there were no disputes over material facts relevant to the issue of law; the only dispute between the parties concerned the calculation of Mr.

---

[1] Extra-duty employment is an employment opportunity offered by the BRPD to eligible, commissioned, full-time police officers to provide security to approved establishments or agencies.

2

Ned's average weekly wage for purposes of determining his entitlement to SEBs. Specifically, the sole issue before the WCJ was whether Mr. Ned's extra-duty compensation should be aggregated with his pre-injury BRPD wages to calculate his average weekly wages and entitlement to SEBs.

Following the submission of briefs and evidence by the parties, the WCJ signed a judgment in favor of Mr. Ned on June 27, 2024, and ordered that Mr. Ned's average weekly wage calculation include wages from his full-time employment with the BRPD and his part-time extra-duty employment. The WCJ then set out the amounts Mr. Ned was owed in SEBs by City/Parish and denied Mr. Ned's claims for penalties and attorney's fees. It is from this judgment that City/Parish appeals.

In its sole assignment of error, City/Parish asserts the WCJ erred in its interpretation of the law in awarding SEBs under the LWCA based on a calculation of Mr. Ned's average weekly wage that included wages from both his regular employment with the BRPD and "his successive employment with separate employers for paid [extra-duty] detail work."

## LAW AND DISCUSSION

Legislation is the solemn expression of the will of the legislature. La. Civ. Code art. 2; **First National Bank, USA v. DDS Construction, LLC**, 2011-1418 (La. 1/24/12), 91 So.3d 944, 953. The determination of the legislature's will must start with the language of the statute itself. **First National Bank**, 91 So.3d at 953. The words used must be interpreted as they are generally understood. La. Civ. Code art. 11; **First National Bank**, 91 So.3d at 953. The rules of statutory construction provide that when the words of a statute are clear and unambiguous, and the application of the law does not lead to absurd consequences, the statute should be applied as written and no further effort should be made to determine the legislature's intent. See La. Civ. Code art. 9; see also La. R.S. 1:4; **First National Bank**, 91 So.3d at 953. When the language is susceptible of different meanings, it must be

3

interpreted as having the meaning that best conforms to the purpose of the law. La. Civ. Code art. 10; **M.J. Farms, Ltd. v. Exxon Mobil Corp.**, 2007-2371 (La. 7/1/08), 998 So.2d 16, 27.

**Applicable Law**

The LWCA was enacted to provide for the timely payment of temporary and permanent disability benefits to all injured workers who suffer an injury or disease arising out of and in the course and scope of their employment. La. R.S. 23:1020.1(B)(1). The LWCA is to be interpreted so as to assure the delivery of benefits to an injured employee. La. R.S. 23:1020.1(C)(1).

The purpose of SEBs is to compensate the injured employee for the wage-earning capacity he has lost as a result of his accident. **Ziegler v. Slidell Memorial Hospital**, 2017-0671 (La. App. 1st Cir. 11/2/17), 236 So.3d 565, 568, citing **Pinkins v. Cardinal Wholesale Supply, Inc.**, 619 So.2d 52, 55 (La. 1993). An employee is entitled to receive SEBs if he sustains a work-related injury that results in his inability to earn ninety percent or more of his average pre-injury wage. See La. R.S. 23:1221(3)(a)(i). The LWCA defines "wage" as "average weekly wage at the time of the accident." La. R.S. 23:1021(13).

Historically, the LWCA made no specific provision for the computation of the average weekly wage of an employee who might be employed by more than one employer. H. Alston Johnson III, "Employees of more than one employer," 14 La. Civ. L. Treatise, Workers' Compensation Law and Practice § 325, (5th ed. October 2025 Westlaw Update). Such employment may be successive or joint, and wages were calculated differently based on these classifications. **Id.** Joint employment was jurisprudentially defined as multiple employers engaged in a common enterprise that contemplates the employment and control of the employee by one of the interested parties for the benefit of all. See **Babineaux v. Southeastern Drilling Corp.**, 170 So.2d 518, 529 (La. App. 3d Cir. 1965) (*en banc*), writs refused, 172

4

So.2d 700 (1965); **Roberson v. Gordon**, 2009-0472 (La. App. 1st Cir. 10/23/09), 2009 WL 3454340, *6 (unpublished). Successive employment was found in cases where an employee is engaged in multiple tasks for multiple employers, but not at the same time. H. Alston Johnson III, "Multiple employment relationship – Successive employment," 13 La. Civ. L. Treatise, Workers' Compensation Law and Practice § 60 (5th ed. October 2025 Westlaw Update); see also **City of Shreveport v. Kingwood Forest Apartments**, 32,370 (La. App. 2d Cir. 10/29/99), 746 So.2d 234, 239. In cases of joint employment, the aggregate of multiple wage sources was the proper basis upon which benefits should be calculated. However, in successive employment scenarios the employer in whose employ the injury occurred is responsible for the payment of compensation. See Johnson, 14 La. Civ. L. Treatise § 325.

The LWCA was amended to acknowledge the aggregate computation in joint employment as found in La. R.S. 23:1031, whereas the codified reference to successive employment and wage computation is more vague and found only in the "definitions" section of the LWCA, specifically under "Wages". Louisiana Revised Statutes 23:1021(13) provides the following guidance as to the manner of calculating an hourly employee's wages in successive employment scenarios:

> (13) "Wages" means average weekly wage at the time of the accident. The average weekly wage shall be determined as follows:
>
> **(a) Hourly wages.**
>
> (i) If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater[.]
>
> \*\*\*
>
> (iv) A part-time employee, as defined in R.S. 23:1021(9) and who is employed by two or more different employers in two or more successive employments, shall be entitled to receive benefits as follows:

(aa) If an employee is employed by two or more different employers in two or more successive employments and the employee incurs a compensable injury under the provisions of this Chapter in one of the employments, the employer in whose service the employee was injured shall pay the benefits due the employee as provided in this Chapter.

(bb) If the employee is a part-time employee in one of the successive employments, is injured in that employment, but as a result of the injury also incurs loss of income from other successive employments, that employee shall be entitled to benefits computed by determining wages under the provisions of this Subsection using his hourly rate in employment at the time of injury and using the total hours worked for all employers of the part-time employee, but not to exceed his average, actual weekly hours worked or forty hours weekly, whichever is less.

Questions of law, such as the proper interpretation of a statute, are reviewed by appellate courts under the *de novo* standard of review, and the appellate court is not required to give deference to the lower court in interpreting a statute. **Odoms v. Cammon**, 2021-0828 (La. App. 1st Cir. 3/3/22), 2022 WL 620773, *3 (unpublished), <u>writ denied</u>, 2022-00560 (La. 5/24/22), 338 So.3d 1186.

## Judicial Interpretation of Multiple Employment Relationships under the LWCA

Citing to **City of Shreveport**, 746 So.2d at 239, City/Parish asserts that Mr. Ned's extra-duty as security for separate employers is successive employment. City/Parish accordingly argues that Mr. Ned's wage computation for his successive employment is based on wages from his employment with BRPD alone. In support of its contention, City/Parish argues that **Holden v. City of New Orleans (NOPD)**, 2011-2075 (La. App. 1st Cir. 6/8/12), 93 So.3d 729, is the case most directly on point to the facts at issue in this matter. However, the **Holden** court is not authoritative in this matter because no evidence of the successive employment or "moonlighting jobs" was ever submitted in that case. Rather, the **Holden** court provided dicta on successive employment stating in a footnote, "[i]t is ... evident that the only time wages from other employers are included in computing the employer's workers' compensation liability is when the employers are joint employers of the same employee." **Holden**, 93 So.3d at 732 n.5. The **Holden** court's dicta is not

6

precedent, nor was it based on any actual evidence of the employers' relationships to each other or to the employee.

City/Parish further relies on **Lott v. Louisiana Power & Light Co.**, 377 So.2d 1277 (La. App. 3d Cir. 1979), writ denied, 381 So.2d 1232 (La. 1980). In **Lott**, an employee worked in the same capacity for two separate companies. After the employee's death, the decedent's family sought to increase the amount of benefits they were receiving, claiming that benefits should be based on the combined weekly earnings of the decedent. The **Lott** court determined that wages paid by a second employer are not considered in determining the compensation liability of the employer for whom the employee was working at the time of his death. **Id.** at 1281. The court held, "[La.] R.S. 23:1031 evidences the intent of the legislature to make an employer's workmen's compensation liability to an injured employee depend only upon the wages which that employer pays to the employee and not upon the total income of the employee." **Id.** at 1280. Accordingly, the **Lott** court determined that the only time wages from other employers are included in computing the employer's workers' compensation liability is when the employers are joint employers of the same employee. **Id.** at 1281. The **Lott** court further noted that "to fix an employer's liability for payment of benefits on all income of the employee, regardless of the source, would be patently unfair to the employer responsible for the payment of benefits." **Id.**

City/Parish further cites to **Guillory v. Interstate Hotels & Resorts**, 2005-650 (La. App. 3d Cir. 12/30/05), 918 So.2d 550, and **Phillips v. United Parcel Service**, 28,110 (La. App. 2d Cir. 2/28/96), 669 So.2d 1375, in support of its argument. In **Guillory**, the employee was injured while in the course and scope of his full-time employment but was also employed part-time with a different employer. The WCJ determined that the average weekly wage calculation for an employee injured in the course and scope of his full-time employment should not

7

include wages from his part-time employer. See **Guillory**, 918 So.2d at 550. On appeal, the **Guillory** court summarized the holding in **Lott**, but then noted that the legislature's 1991 amendment of La. R.S. 23:1021 carved out an exception to **Lott** by allowing a part-time employee injured at his part-time employment to cumulate wages from another unrelated part-time or full-time employer, not to exceed forty hours. **Guillory**, 918 So.2d at 551-52. Since the claimant was injured in his full-time employment, the **Guillory** court noted that any cumulation with an unrelated employer would take the claimant beyond the forty-hour limit; therefore, the claimant's part-time wages could not be considered. **Id.** at 552.

In **Phillips**, the injured employee worked full-time at a bank and had a part-time job at UPS. 669 So.2d at 1376. The claimant's injury occurred while at his part-time job. The claimant never missed work from the full-time position, but sought SEBs, arguing that he was eligible for SEBs until he was able to earn ninety percent of the combined wages he was earning from both jobs when he was injured. The **Phillips** court acknowledged that the LWCA does not explicitly limit computation of the average wages to the wages earned in the employment in which the employee was injured. **Id.** The **Phillips** court concluded that subsection (bb) (of the former version of what is now La. R.S. 23:1021(13)(a)(iv))[2] applies when the injury sustained in one successive employment disables the employee from performing work for that employer and for his other employer(s), while subsection (aa) (of the former version of what is now La. R.S. 23:1021(13)(a)(iv))[3] applies to successive employees, like the claimant in **Phillips**, when the injury and resulting disability occur in the service of one successive employer, but not the other.[4] **Id.** at

---

[2] At the time **Phillips** was decided, La. R.S. 23:1021(13)(a)(iv)(bb) was designated as "La. R.S. 23:1021(10)(a)(iv)(bb)"; however, the language is identical.

[3] At the time **Phillips** was decided, La. R.S. 23:1021(13)(a)(iv)(aa) was designated as "La. R.S. 23:1021(10)(a)(iv)(aa)"; however, the language is identical.

[4] The **Phillips** court noted that paragraph (iv), which immediately precedes subsections (aa) and (bb) applies the subsections to a part-time employee as defined in now redesignated La. R.S. 23:1021(11), who is employed by two or more employers in successive employments, whereas the

8

1378. When subsection (aa) of La. R.S. 23:1021(13)(a)(iv) applies, the calculation may be made in either of two ways: by including the claimant's full-time earnings and comparing his combined pre-accident earnings from both jobs to his post-accident earnings from the full-time job, or by excluding the full-time earnings and comparing his pre-accident earnings from his part-time job alone to his part-time earnings after the injury. See **Phillips**, 669 So.2d at 1378.

Mr. Ned also cites to the **Phillips** case and its discussion of aggregating wages and directs this court's attention to jurisprudence that holds despite successive employment classification, weekly wage calculations should be based on aggregate wages of all employment. The court in **Leger v. Calcasieu Parish School Board**, 2009-1261 (La. App. 3d Cir. 4/7/10), 34 So.3d 1042, writ denied, 2010-1005 (La. 6/25/10), 38 So.3d 348, was tasked with deciding whether the claimant's average weekly wage should include, in addition to her wages from her full-time employment (where she sustained her injuries), her wages from her part-time employment. 34 So.3d at 1043. The claimant in **Leger** was unable to continue *either* employment until approximately a year after the accident. **Id.** While the parties seemed to agree that subsection (bb) (of the former version of what is now La. R.S. 23:1021(13)(a)(iv))[5] applied, they disagreed as to the meaning of the phrase "that employment" therein. See **Leger**, 34 So.3d at 1044. The employer argued that the phrase should be interpreted as referring to part-time employment only, while the claimant contended that it refers to any of her successive employments. **Id.** The **Leger** court reasoned:

> If the [employer's] reading is correct, it would mean that, because [the claimant] was not injured in the course and scope of her employment with [her only part-time employment], the statute would not apply in this case. If [the claimant] is correct in her reading that the

claimant worked full-time for the bank and was a part-time employee only of UPS. 669 So.2d at 1377 n.1. Since the litigants did not argue the inapplicability of the subsections, the court did not address the issue of the "definition problem." **Id.**

[5] At the time **Leger** was decided, La. R.S. 23:1021(13)(a)(iv)(bb) was designated as "La. R.S. 23:1021(12)(a)(iv)(bb)"; however, the language is identical.

9

statute refers to either of the successive employments, then the statute would be applicable in this case as she was injured in her successive employment as a school bus driver.

**Id.** at 1045. After recognizing that both interpretations of the statute are plausible, the court noted that workers' compensation statutes are to be interpreted liberally in favor of the employee. **Id.**, citing **McLin v. Industrial Specialty Contractors, Inc.**, 2002-1539 (La. 7/2/03), 851 So.2d 1135, 1139. In light of the ambiguity of the former version of what is now La. R.S. 23:1021(13)(a)(iv), the liberal construction in favor of the employee regarding workers' compensation laws, and the cases cited in its opinion, the **Leger** court found that the WCJ was correct in including the claimant's wages from her part-time employment in its calculation of her average weekly wages. **Leger**, 34 So.3d at 1046.

Mr. Ned argues the same conclusion was reached in **Jones v. Orleans Parish School Board**, 370 So.2d 677 (La. App. 4th Cir. 1979), where the claimant was a teacher who was injured while breaking up a fight between two students; he was also employed as a used-car salesman. 370 So.2d at 679. The **Jones** court held that in order to determine the difference between the claimant's pre-injury earnings and post-injury earnings, his salaries from both positions should be considered. **Id.** at 680. The **Jones** court reasoned that, otherwise, this would unjustly penalize potential claimants from moonlighting to pay for family expenses. **Id.**

Mr. Ned also cited to **Glynn v. City of New Orleans**, 95-1353 (La. App. 4th Cir. 4/3/96), 672 So.2d 1112, which dealt specifically with SEBs. The claimant in **Glynn** was an employee of the City of New Orleans, and was injured in that employment. **Glynn**, 672 So.2d at 1113. The employee filed a workers' compensation action in which he sought SEBs. **Id.** at 1114. The WCJ awarded SEBs, and the Fourth Circuit affirmed. **Id.** at 1114-16. Citing **Jones**, the **Glynn** court determined that the claimant's additional revenues from employment other than the city and his state supplemental pay were properly included in his earnings

to calculate his SEBs.  **Id.** at 1115.  See also **Mitchell v. Winnfield Holding Corp.,** 2003-677 (La. App. 3d Cir. 12/17/03), 861 So.2d 931, 934, writ denied, 2004-0191 (La. 4/2/04), 869 So.2d 878, citing **Glynn,** 672 So.2d 1112 (finding that excluding the wages from the claimant's part-time employment in the wage calculation was improper).

## Analysis

In the instant matter, we note that both City/Parish and Mr. Ned relied on much of the same evidence including, in pertinent part, BRPD's policy regarding extra-duty work.  The BRPD's extra-duty policy initially provides that the BRPD regulates off-duty employment for all officers.  The policy states that officers are restricted to working a set number of hours per day, including regular duty, overtime, and extra-duty, and that a process is employed to document such hours.  As the policy explains, "[e]xtra-duty employment is a job where one of the requirements is being a sworn law enforcement officer[,]" and provides examples of "suitable" extra-duty jobs, which include traffic control, crowd control, security and protection of life and property, and routine law enforcement for public authorities.  The policy provides eligibility qualifications for extra-duty work, including being an officer in good standing and a full-time employee.  The policy further provides that misconduct or poor performance may result in revocation of approval for extra-duty. According to the policy, employers who wish to employ extra-duty officers must complete an application and submit same to the Extra-Duty Office, which processes the application and gives it to the Chief of Police who approves or denies the employer's request.  The Chief of Police also has sole authority to establish minimum extra-duty rates and approve officers for extra-duty work following the officer's formal request for approval.  A police officer engaged in any outside employment who is called-out by BRPD is expected to leave his extra-duty job. Furthermore, the policy provides that Extra-Duty Administrative Officers exist and

11

are responsible for scheduling officers to cover the hours needed by the extra-duty employers and making sure all paperwork that is needed for officers working extra-duty is provided to the Extra-Duty Office. Finally, the policy specifically states that "officers that are on workers compensation shall not work extra[-]duty or secondary employment."

In his affidavit, Mr. Ned attested to being a twenty-five-year employee of the BRPD. Mr. Ned stated that prior to his injury, his weekly wages were made up of his BRPD employment and extra-duty details with Our Lady of the Lake Regional Medical Center and the Louisiana Department of Agriculture. Mr. Ned further stated that his "extra-duty" job assignments had to be approved by the BRPD and that he could not work these extra-duty job assignments unless they were so approved. He stated that his extra-duty assignments were coordinated by an Extra-Duty Officer. Mr. Ned stated that BRPD required him to submit monthly documentation of the dates and hours he worked extra-duty as well as the pay he received. Mr. Ned attested that BRPD required him to wear an issued departmental uniform during his extra-duty assignments and that he was also required to check in with BRPD at the start of every extra-duty assignment to give his location and hours. Mr. Ned also stated that he was authorized to make arrests while on extra-duty and did so on several occasions. Finally, Mr. Ned attested that his extra-duty job assignments made up thirty-six percent of his wages at the time of the accident, which he has been unable to earn otherwise.

Based on the evidence provided regarding Mr. Ned's extra-duty details, we find the cases cited by City/Parish discussing successive employment factually distinguishable. Although City/Parish attempts to deemphasize the issue of BRPD's control over Mr. Ned's extra-duty details such that the court considers these details as completely separate employment, BRPD's own policies provide otherwise. Mr. Ned did not find part-time employment on his own, unrelated to his full-time

12

position as a police officer, but applied within the BRPD to work an extra-duty detail for a BRPD-approved employer. In so doing, he had to meet certain qualifications within the BRPD in order to be considered for such assignments, such as be a full-time employee, commissioned, and a police officer in good standing. The BRPD was in charge of setting officer pay rates and administering paperwork and schedules to ensure that officers stay in compliance with BRPD policies. This factual scenario is more akin to a borrowed employer relationship wherein both employers are considered jointly liable for an injured employee, thereby making an aggregate calculation of all wages appropriate for the determination of the employee's average weekly wage and entitlement to SEBs. Accordingly, we find no error in the WCJ's calculation of Mr. Ned's average weekly wage taking all of his income into account and finding Mr. Ned to be entitled to SEBs.

## CONCLUSION

For the aforementioned reasons, we affirm the WCJ's June 27, 2024 judgment. Costs of this appeal in the amount of $1058.00 to be borne by the appellant, City of Baton Rouge/Parish of East Baton Rouge.

**AFFIRMED.**