WELCH, J.
 

 ^Plaintiff, Margaret A. Madden, appeals a judgment denying her claim for indemnity benefits against her former employer, Lemle & Kelleher, LLP, and its workers’ compensation insurer, Louisiana Workers’ Compensation Corporation (LWCC). We affirm.
 

 BACKGROUND
 

 On March 6, 2004, Ms. Madden, a paralegal employed by Lemle & Kelleher, injured her left shoulder while lifting boxes of files in the course and scope of her employment. Ms. Madden continued to work until October 11, 2004. In October, an MRI revealed that Ms. Madden sustained a torn rotator cuff, and she underwent surgery to repair the tear in November of 2004. In April of 2005, a second rotator cuff surgery was performed.
 

 Lemle & Kelleher, through its workers’ compensation carrier, LWCC, began paying medical benefits and indemnity benefits to Ms. Madden on October 11, 2004. In October of 2005, her treating physician, Dr. James R. Gosey, Jr., an orthopedic surgeon, suggested that a functional capacity evaluation (FCE) be performed to determine what type of work Ms. Madden could perform.
 

 On November 30, 2005, and December 1, 2005, Ms. Madden underwent an FCE. The notes of that evaluation indicate that Ms. Madden was cooperative and gave her maximum effort on all test items. It was determined that Ms. Madden could perform a job in the light duty category. The FCE noted that Ms. Madden reported having to lift file boxes weighing about 30 pounds from the floor in her job as a paralegal assistant, a factor making that job fall within the medium physical demand level and beyond Ms. Madden’s current lifting capacity from floor level of 23 pounds on occasion.
 

 Some time around the end of 2005, Rusty Pleune, a vocational rehabilitation consultant, was assigned to Ms. Madden’s case. On December 8, 2005, he |oinformed LWCC that he had contacted Lemle & Kelleher and learned that the firm would be willing to have Ms. Madden return to work and that it would make reasonable accommodations so that she could return to work. The firm indicated it would reduce the amount of weight Ms. Madden would be required to lift and that it would provide Ms. Madden with assistance in lifting heavy items. A full duty assessment was prepared for the paralegal job on December 8, 2005, restricting the lifting of objects to 20 pounds. The assessment noted that while Ms. Madden may have lifted boxes weighing over 20 pounds in the past, such was not a job requirement, and there were other individuals in the office who could lift anything weighing over 20 pounds. The assessment contains a section in which Ms. Madden was to certify that she reviewed the analysis and understood that it was a transitional position available to her during her recovery from the on-the-job injury.
 

 On March 1, 2006, Dr. Gosey opined that Ms. Madden had reached maximum medical improvement. At that time, he noted that Ms. Madden was not fit for her old job and needed a different job with less lifting and less overhead work. However, after receiving the modified paralegal job with lifting restrictions as identified in the full duty assessment forwarded to him by Mr. Pleune, on March 29, 2006, Dr. Gosey certified that he felt the job was within Ms. Madden’s physical capabilities.
 

 A second job assessment for the job of legal secretary was prepared on May 17, 2006, with lifting restrictions of 20 pounds
 
 *249
 
 maximum, containing the same notation that other individuals in the firm’s employ could lift objects weighing over 20 pounds. The job assessment was forwarded to Dr. Gosey, who certified on June 6, 2006, that he felt the job fell within Ms. Madden’s physical capabilities.
 

 On June 20, 2006, Mr. Pleune wrote Ms. Madden a letter advising her that Dr. Go-sey approved her to return to work in both positions as a legal secretary and |4paralegal with Lemle
 
 &
 
 Kelleher, and that Lemle & Kelleher formally offered her a position and would like for her to return to work on June 28, 2006. Ms. Madden refused to return to work, and on June 28, 2006, her benefits were terminated.
 

 On June 28, 2006, Ms. Madden’s attorney sent Dr. Gosey a letter requesting that he review a job assessment for the paralegal position to which Ms. Madden had made changes regarding the physical demands of the job. Dr. Gosey was asked whether, if the changes reflected by Ms. Madden were true, he would still be of the opinion that Ms. Madden could do the job as described on a 40-hour a week basis. Dr. Gosey replied that he did not feel Ms. Madden could do the job description as modified by Ms. Madden, noting that it entailed more lifting and overhead activities that were restricted in Ms. Madden’s case.
 

 On December 15, 2006, Ms. Madden filed this disputed claim for compensation against Lemle & Kelleher and LWCC (sometimes referred to hereafter as defendants) in the Office of Workers’ Compensation (OWC), charging that her workers’ compensation wage benefits were improperly terminated on June 28, 2006.
 
 [1]
 
 She alleged that she was permanently and totally disabled from any employment and was disabled from returning to her prior job. Ms. Madden urged that she could not return to her previous job because it involved moving, loading, and unloading heavy boxes; she could not work at a computer for an extended period of time; and she could not drive from her home in Slidell to get to Lemle
 
 &
 
 Kelleher’s New Orleans office.
 

 A trial was held, at the outset of which Ms. Madden raised for the first time a rehabilitation issue, urging that because rehabilitation had been initiated, upon her failure to accept the modified position offered by Lemle & Kelleher, the law permitted only the imposition of a reduction of her benefits by one-half until such |stime as she accepted the position.
 

 At trial, Ms. Madden, a co-employee, and Lowry Jackson, Lemle & Kelleher’s human resources manager, testified. Ms. Madden testified that she could not work in the modified position, observing that the drive would take a toll on her, she would have to sit at the computer for long periods of time, and she would have to lift and carry heavy files. She admitted that she never returned to work to see if she could perform the modified job and that she had not attempted to work elsewhere. Ms. Jackson testified that Lemle
 
 &
 
 Kelleher would provide Ms. Madden someone to assist her in lifting and that Ms. Madden would not be required to do any overhead lifting. She further attested that Ms. Madden was going to make the same salary in the modified position as she did before she left her position. Documentary evidence introduced at the trial includes Dr. Gosey’s
 
 *250
 
 medical records, the FCE evaluation, and Mr. Pleune’s records.
 

 The workers’ compensation judge (WCJ) determined that Ms. Madden failed to carry her burden of proving by clear and convincing evidence that she is temporarily or permanently totally disabled, and therefore was not entitled to total disability benefits. The WCJ noted that the medical evidence demonstrated that Ms. Madden is capable, at the very least, of light duty work. The WCJ further found that Ms. Madden failed to carry her initial burden of proving by a preponderance of the evidence that she is unable to earn ninety percent or more of her pre-injury wage and, therefore, was not entitled to supplemental earnings benefits. In her written reasons, the WCJ noted that despite being released by her treating physician to return to work, Ms. Madden was not willing to return to work. She also stressed that Lemle & Kelleher was willing to offer Ms. Madden either a paralegal or legal secretary position, both of which Ms. Madden had previously held, and that Ms. Madden would have been paid her pre-injury wage at either position.
 

 | (iThis appeal followed.
 

 DISCUSSION ,
 

 In a workers’ compensation case, the appellate court’s review of factual findings is governed by the manifest error or clearly wrong standard.
 
 Rushing v. Winn-Dixie Louisiana, Inc.,
 
 2006-2016, p. 3 (La.App. 1st Cir.8/1/07), 965 So.2d 462, 463. The two-part test for reversal of a factfinder’s determination is whether there is a reasonable factual basis in the record for the finding and whether the record establishes the finding is manifestly erroneous.
 
 Stobart v. State,
 
 617 So.2d 880, 882 (La.1993). This court is not called upon to determine whether the WCJ’s factual findings are right or wrong, but whether the factfinder’s conclusion is reasonable.
 
 Rushing,
 
 2006-2016 at p. 3, 965 So.2d at 463.
 

 An employee seeking to recover indemnity benefits for a temporary or permanent total disability must prove by clear and convincing evidence that he is physically unable to engage in any employment. La. R.S. 23:1221(l)(c) and (2)(c). Ms. Madden’s own treating physician opined that she could return to work at a light duty position, and there was no medical evidence contradicting this opinion. We find the WCJ’s determination that Ms. Madden failed to carry her burden of proof by clear and convincing evidence to be entirely reasonable and that finding is not manifestly erroneous.
 

 A threshold prerequisite to entitlement to supplemental earnings benefits under La. R.S. 23:1221(3) is that the employee’s injury results in an inability to earn wages equal to ninety percent or more of the wages he was earning at the time of the injury. The injured employee bears the burden of proving that the injury resulted in his inability to earn that amount in any employment.
 
 Sartin v. LSU/Bogalusa Medical Center,
 
 2007-1367, p. 5 (La.App. 1st Cir.2/8/08), 984 So.2d 777, 780.
 

 We find no error in the WCJ’s determination that Ms. Madden failed to |7carry her initial burden of proving by a preponderance of the evidence that she is unable to earn ninety percent or more of her pre-injury wages. Ms. Madden’s treating physician approved of the modified position offered by Lemle & Kelleher, which the evidence established would pay the same rate as her pre-injury position. Ms. Madden did not offer medical evidence substantiating her claim that she was unable to perform the modified job and did not meet her threshold burden of demonstrat
 
 *251
 
 ing an inability to earn ninety percent or more of her pre-injury wage.
 

 Lastly, we reject Ms. Madden’s contention that the WCJ erred in not applying La. R.S. 23:1226(B)(3)(c) to this case. Louisiana Revised Statutes 23:1226 provides that when an employee has suffered an injury precluding him from earning wages equal to the wages earned prior to the injury, the employee is entitled to prompt rehabilitation services. Other provisions in the statute give both the employer and employee the right to utilize an expedited procedure in the event the employer refuses to provide rehabilitation services or the employee refuses to cooperate in the rehabilitation process.
 
 See
 
 La. R.S. 23:1226(B)(3)(a) and (c). Ms. Madden insists that after she refused to accept the modified position, defendants were required to file a petition in the OWC demanding that she take the job, and if she refused to do so, she would be subject to a fifty percent reduction in her weekly compensation benefits for each week of the period of refusal in accordance with La. R.S.23:1226(B)(3)(c).
 

 We find no merit in this argument. Ms. Madden’s supplemental earnings benefits were terminated not because of her lack of cooperation in the rehabilitation process, but because she was capable of returning to work at an available job earning one hundred percent of her pre-injury wage. At that point, she was no longer entitled to receive supplemental earnings benefits or further rehabilitation services under La. R.S. 23:1226. Accordingly, La. R.S. 23:1226(B) (3) (c) is not applicable in this case, and defendants were not obligated |Rto petition the OWC to reduce Ms. Madden’s benefits when she refused to accept the modified position.
 

 CONCLUSION
 

 For the foregoing reasons, the judgment appealed from is affirmed. All costs of this appeal are assessed to appellant, Margaret Madden.
 

 AFFIRMED.
 

 [1]
 

 . It is undisputed that Ms. Madden was paid indemnity benefits from October 11, 2004, through June 28, 2006. LWCC’s payment records indicate that the majority of this time, Ms. Madden was paid total disability benefits; however, for the remainder of the time, she received supplemental earnings benefits.