370 So.2d 677 (1979)
Melvin C. JONES, Sr.
v.
ORLEANS PARISH SCHOOL BOARD and ABC Insurance Company.
No. 10156.
Court of Appeal of Louisiana, Fourth Circuit.
April 10, 1979.
*678 Keith A. Rodriguez, J. Browne Larose, III, New Orleans, for plaintiff-appellee.
Jefferson, Bryan & Gray, Trevor G. Bryan, New Orleans, for Orleans Parish School Bd., defendant-appellant.
Before LEMMON, GULOTTA and STOULIG, JJ.
STOULIG, Judge.
Defendant, the Orleans Parish School Board, has appealed a judgment awarding plaintiff, Melvin C. Jones, Sr., workmen's compensation benefits of $85 per week for 500 weeks, plus medical expenses for a back injury he sustained on March 4, 1976 during the course of his employment as a teacher. At the time of injury he was attempting to break up a fight between two fifth grade students at McDonogh No. 39 School in New Orleans.
The trial court concluded plaintiff sustained a herniated disc when he was struck in the back by a desk being swung by one of the two fighting boys. Appellant seeks reversal claiming the trial court's factual conclusions are manifestly erroneous in that (1) the lay testimony failed to prove plaintiff was hit by the desk as he claims, and (2) that the lumbar disc problem was in fact caused by the accident in school.
To reverse the trial court's finding of fact, we must conclude the result is manifestly erroneous. Todero v. Great Atl. & Pac. Tea Co., Inc., 343 So.2d 388 (La.App. 4th Cir. 1977).
With respect to the blow from the desk, plaintiff testified he was teaching his sixth grade class when a student from the adjacent classroom rushed into his room and asked him to come to the fifth grade to break up a fight. He and a student teacher, Charles Block, who was present in plaintiff's class at the time, found two boys fighting when they arrived on the scene. After separating them, one boy threw a book at young Robert Bragg, who then grabbed a desk and swung it. To avoid being hit in the face, plaintiff raised his left arm to protect himself and twisted away; however, the desk hit him on his arm and along his back. Bragg at the same time kicked him in the leg. Mrs. Lolita Cherrie, the teacher in whose room the fight erupted, first stated she watched the whole fight and did not see the desk hit plaintiff. Later she admitted she was not asserting the plaintiff was not hit by the desk but rather that she did not see the blow.
Mrs. Cherrie was not a disinterested witness in that she was named defendant in another lawsuit filed by the plaintiff, as will appear from a deposition filed in evidence in this matter. In dictated reasons for judgment the trial judge stated he was not impressed with this witness who asserted she called plaintiff into her room simply to witness the fight, not to break it up. While we do not expect Mrs. Cherrie to risk bodily injury to break up a fight, we find her motive for calling plaintiff as a corroborating witness rather than as a peacemaker lacking the degree of responsibility that teachers have toward their students. A *679 finding that plaintiff was struck by the desk on the back is not clearly wrong.
As to the disability issue, the medical evidence establishes plaintiff is suffering from a herniated lumbar disc. The issue here is whether the accident of March 4, 1976 caused the back injury or aggravated a pre-existing condition to a disabling point.
Plaintiff retired on June 1, 1976 after 20 years as a teacher. Defendant points to this fact as supportive of its theory that plaintiff planned to retire before the fighting incident and the claim for workmen's compensation was a post-incident afterthought.
Defendant called Dr. George Guild, a psychiatrist who had been treating plaintiff prior to the accident, to establish plaintiff frequently spoke of retiring as soon as he attained 20 years of experience. The doctor explained that at the end of 1974 plaintiff was depressed and disgruntled because violence in the schools had created an atmosphere detrimental to teaching and learning, which reduced his job to a custodial position. He characterized plaintiff as a "well-intentioned, devoted worker" who was disillusioned with the system.
From January 20, 1975 to May 30, 1975, plaintiff was granted a rest and recuperative sabbatical leave after teaching 18 years in the Lawless school. From September 1975 until the accident he taught at McDonogh No. 39.
Defendant contends the claim was contrived; however, in retracing plaintiff's actions after the accident, we find this contention meritless. Plaintiff consulted Dr. Claude Williams, a board certified orthopedist, on March 18, 1976, at which time plaintiff explained, among other things, that he first felt excruciating pain in the lumbar region on March 12, 1976 when he stooped over in the shower. He did not mention the fight at school. However when he returned to Dr. Williams six days later, he did describe the fight incident.
Dr. Williams recommended hospitalization for conservative treatment, and when plaintiff informed him he could not afford it, he was referred to Touro Clinic where he could receive free medical service. On his initial visit on March 30, 1976, plaintiff did not state in his history that he was struck by a desk at school. He explained that he omitted telling of the incident for fear the clinic would not treat him because his income was too high. Plaintiff was moonlighting as a car salesman at Star Chrysler when he was not involved with school and both incomes in 1975 totaled $31,587.27. Because he had five children in college at the time, his expenses were staggering. When asked where he was employed, he gave the name of Star Chrysler and omitted the school so that he would qualify for free clinic treatment.
Perhaps his failure to relate the incident to either Dr. Williams or Dr. Boulos Bouz at the clinic would be entitled to greater significance if he had not initially complained of pain to his psychiatrist, at which time he recounted the school fight incident. This pre-dated the first visit to Dr. Williams, because it was Dr. Guild who referred plaintiff to Dr. Williams.
His condition was diagnosed by Dr. Williams as lumbosacral strain and a possible lumbar disc syndrome. As we understand the doctor's testimony on the causal relationship between the fight and the disc problem, he stated, as positively as any medical witness will make any pronouncement, that the fight could have set up the disc for rupture, and the herniation could have occurred several days later with the bending motion in the shower.
Although questioned repeatedly by defense counsel if it was more likely that the shower incident independent of anything else caused the disc to herniate, Dr. Williams refused to subscribe to this theory.
Dr. Bouz, a resident, did state in his opinion the bending motion was more likely to have caused the disc than the fight, but he would not rule out the fight as a contributing factor. As did the trial court, we give greater weight to the opinion of the practicing orthopedist than that of the medical resident. We conclude the school fight is *680 directly related to the disc problem, and the fact that plaintiff had back problems on several occasions prior to this fight does not change our opinion.
As to benefits, appellant correctly points out that plaintiff has not proved he is totally and permanently disabled from engaging in any gainful occupation for wages. Rather his benefits are determined by R.S. 23:1221, the permanent partial disability section of the act. The rate at which plaintiff is entitled to be compensated is as follows:
"(3) For injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience, sixty-six and two-thirds per centum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, during the period of disability, but not beyond a maximum of four hundred weeks for such partial disability resulting from injury occurring on and after September 1, 1975, and on or before August 31, 1976 * * * provided further that for any week during which the employee is paid any compensation under this subdivision (3) the employer shall be entitled to a reduction of one full week of compensation against the maximum number of weeks for which compensation is payable under this subdivision (3) and for any week during which the employee is paid no compensation, because of the employee's actual earnings during that week, the employer shall not be entitled to a reduction for that week against the maximum number of weeks for which compensation is payable under this subdivision (3), and in no event shall the total number of weeks of compensation for such partial disability under this subdivision (3) be increased beyond the maximum number of weeks stated in this subdivision (3)."
Reading the quoted section in conjunction with R.S. 23:1202, it would appear that at the time of plaintiff's injury the two-thirds differential between the pre-injury earnings and the post-injury earnings could not exceed $85 because of the legislative limitation in this section. In considering the earning differential in this case, the court must use the sum of the salaries plaintiff earned from both jobs at the time of the incident, against which must be applied, on a weekly basis, all wages earned thereafter, to determine what compensation is in fact due. Were we to simply measure the school teaching salary against present earnings as a car salesman, we would unjustly penalize the plaintiff for moonlighting to pay his family expenses. The plaintiff's income in 1975 was $31,587.27; in 1976, $19,151 and in 1977, $5,509.
Under the statute, compensation payments are due in those weeks when plaintiff's salary did not equal or exceed his weekly earnings prior to the accident. Although annual totals are available in the record there is insufficient evidence before us to compute the amount of compensation due. In order to properly compute the benefits, the plaintiff must furnish a breakdown of wages by the week. As the act states, the employer is to be allowed a credit for each week any wages are earned, no matter how small or how large the amount.
In computing post-accident earnings and benefits to which plaintiff is entitled, his pension should not be taken into consideration. Accordingly, we remand this matter for the limited purpose of permitting the litigants to adduce evidence as to plaintiff's weekly earnings after the accident so that his benefits may be computed.
For the reasons assigned, the judgment appealed from is vacated insofar as it awards compensation benefits at the rate of *681 $85 per week for 500 weeks and remanded for further proceedings to determine plaintiff's entitlement to benefits for a period not to exceed 400 weeks. In all other respects the judgment appealed from is affirmed.
AFFIRMED IN PART AND REMANDED.