LUKE DELAHOUSSAYE

VERSUS

LIVE OAK GARDENS, LTD.

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 4
PARISH OF LAFAYETTE, NO. 07-01305
SHARON MORROW, WORKERS' COMPENSATION JUDGE

**********

OSWALD A. DECUIR
JUDGE

**********

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and J. David Painter, Judges.

**Cooks, J., dissents and assigns written reasons.**

AFFIRMED.

**Michael B. Miller**
**Attorney at Law**
**P. O. Box 1630**
**Crowley, LA 70527**
**(337) 785-9500**
**Counsel for Plaintiff-Appellant:**
    **Luke Delahoussaye**

**W. Michael Stemmans**
**M. Todd Alley**
**Michael J. Taffaro**
**Jennifer E. Frederickson**
**Stemmans & Alley**
**2798 O'Neal Lane, Suite B3**
**Baton Rouge, LA 70816**
**(225) 752-5266**
**Counsel for Defendants-Appellees:**
    **Live Oak Gardens, Ltd.**
    **Bridgefield Casualty Insurance Company**

**DECUIR, Judge.**

Luke J. Delahoussaye was a heavy equipment operator with Live Oak Gardens, Ltd. when he was injured on the job on January 3, 2006. Delahoussaye was paid compensation benefits until he returned to work but filed this contested claim for benefits after his employment was terminated in November of 2006. The workers' compensation judge awarded supplemental earnings benefits, which were subject to a credit for all business income received by Delahoussaye as a result of his ownership interest in two local companies. Medical benefits, penalties, and attorney fees were also awarded. Delahoussaye has appealed the business income credit awarded in favor of the employer. The employer has neither appealed nor answered the appeal. For the following reasons, we affirm.

The record reveals the following chronology of events. The workers' compensation insurer, Bridgefield Casualty Insurance Company, paid weekly indemnity and medical benefits from the time of injury through May 16, 2006. On that date, the claimant returned to work in a light-duty supervisory position created for him, earning pre-injury wages and benefits. He worked in that position until November 16, 2006, when he was terminated by his employer. The evidence in the record indicates that Live Oak management felt Delahoussaye's continued employment was creating morale problems, as Delahoussaye was receiving the same pay for what was seen by other employees as less work; plus, he occasionally conducted other business activities solely for his own profit during his work day at Live Oak. While Delahoussaye's other business activities did not constitute full-time employment, the evidence shows that he did occasional work that consisted of monitoring jobs, making contacts, picking up or hauling supplies, and answering questions or calls.

Upon termination by Live Oak, compensation benefits were not reinstated. The defendants were aware that Delahoussaye was a one-half owner of J.L.Hydroseeding, LLC, an erosion control business, and a one-third owner of Southern Innovative Services, LLC, an excavation and sales business. Live Oak was aware that Delahoussaye had income from these businesses; indeed, the companies often did business together and the president of Live Oak, Michael Richard, authorized Delahoussaye's involvement in the ventures. However, neither Live Oak nor its insurer were informed of the amount of that income. Hence, the workers' compensation judge concluded the defendants "[were] never in a position to even estimate an amount to tender" as supplemental earnings benefits.

The Workers' Compensation Act requires injured employees who are receiving indemnity benefits to report business income monthly by filing a Louisiana Department of Labor form referred to as Form 1020. The form requires information on self-employment or involvement in any business enterprise, including "farming, sales work, operating a business (even if the business lost money), child care, yard work, mechanical work, or any type of family business." The worker must describe the type of business, his job duties, and the amount of income received from the business. In the instant case, Delahoussaye did not complete any Form 1020s.

The parties do not dispute Delahoussaye's eligibility for supplemental earnings benefits, nor do they contest the factual conclusions regarding the award of penalties and attorney fees. Rather, the question raised in this appeal is whether the trial court erred in concluding that Delahoussaye's earnings from his business interests operate as a credit against any indemnity benefits the defendants might owe after Delahoussaye's termination from his modified job at Live Oak. The trial court gave the following analysis:

2

Business income is to be used in the calculation of supplemental earnings benefits. In *Lafleur v. Hartford Insurance Company,* 449 So.2d 725 (La. App. 3 Cir. 1984), the employee and his wife opened a sausage kitchen after his injury disabled him from his job of injury. The court found that the lower court had correctly assigned one-half of the business profits of the community business to the employee's post-injury wage credit. In *Caparotti v. Shreveport Pirates Football Club,* [33,570 (La.App. 2 Cir. 8/23/00), 768 So.2d 186, *writ denied,* 00-2947 (La. 12/15/00), 777 So.2d 1230], the court specifically held that profits from the claimant's business would be treated in the same manner as wages for the purpose of calculating supplemental earnings benefits.

In those cases, the claimants became self-employed only after their work injuries. In the present case, Delahoussaye's businesses existed prior to his injury with Live Oak and continued after his injury. Mr. Delahoussaye's counsel correctly asserts that under current jurisprudence, the claimant's business earnings cannot be included in the calculation of the average weekly wage, citing cases including *Lott v. Louisiana [Power & Light],* 377 So.2d 1277 (La. App. 3 Cir. 1979) and *Guillory v. Interstate Hotels [& Resorts,* 05-650 (La.App. 3 Cir. 12/30/05), 918 So.2d 550.]...

Delahoussaye contends that because the business income cannot be included in the average weekly wage calculation, it cannot be credited against him as post-injury earnings....

While Delahoussaye's counsel is correct that using income from other employment for the post-injury calculation but not in the calculation of average weekly wage deprives the employee of the maximum protection of his earnings, the Third Circuit already considered that possibility in *Lott* when it stated that the law, as presently constituted, may, in certain isolated cases, not fully provide for the employee's loss of earning capacity... . Malone and Johnson also address this concern in the following discussion of the *Jones* [*v. Orleans P. Sch. Bd.*, 370 So.2d 677 (La. App. 4 Cir. 1979)] case:

> However, upon closer examination, the alleged unfairness is less apparent. The Act is not a wage-insurance plan. Rather, it is a legislative scheme intended to insure a basic minimum subsistence to persons now wholly or partially unable to earn their prior wage to work-related injuries. This is apparent when one considers the plight of two injured workers now wholly disabled. Even if one earned $500 per week prior to the injury and the other $1000 per week, they receive precisely the same benefit check: the statutory maximum. The higher-paid worker may argue that this is unfair, and he would be right if the legislative objective were a wage-replacement plan. But the legislative intent is to guarantee basic subsistence levels thought to be reasonable and economically feasible, not to

> replace wages at pre-injury levels. If the higher-paid worker wants a wage-replacement plan, he will have to purchase it in the private sector.
>
> Wex S. Malone & H. Alston Johnson III, *Workers' Compensation Law and Practice*, 13 Louisiana Civil Law Treatise, § 277 (4ᵗʰ ed. 2002). See also Malone & Johnson, *Workers' Compensation Law and Practice*, 14 Louisiana Civil Law Treatise, § 324 (4ᵗʰ ed. 2002).

After considering the position advocated by each side, we find the ruling of the workers' compensation judge to be correct. Delahoussaye's involvement in the operation of J.L. Hydroseeding and Southern Innovative Services was minimal but clearly more than just an investment. We conclude, therefore, that the type of business income generated by Delahoussaye must be treated as any other post-injury business earnings. It should have been disclosed on a Form 1020. It will be used to offset supplemental earnings benefits as the law provides in La.R.S. 23:1221.

Finally, in this appeal, the claimant has requested additional attorney fees for work performed pursuant to the appeal. We decline to grant the claimant's request as his appeal has been unsuccessful.

For the above and foregoing reasons, the judgment appealed from is affirmed in all respects. Costs of the appeal are assessed to the claimant, Luke J. Delahoussaye.

**AFFIRMED.**

LUKE DELAHOUSSAY

VS.

LIVE OAK GARDEN

**COOKS, J. DISSENT**

While I agree a portion of Delahoussay's "business profits" should be offset to account for his "labor" in creating the companies' combined net profit, the total profit of his business ventures are not attributable to his labor and do not constitute earnings within the contemplation of the Act. Rather, the total "profit" line in this case reflects two amounts- one solely attributable to Delahoussay's labor and the other solely a return on his investment which is not subject to SEB offset.

SRC/emb