KUHN, J.
| {.Claimant-appellant, Malinda Holden, appeals OWC’s actions of granting a partial motion for summary judgment in favor of her employer, the City of New Orleans, New Orleans Police Department (the City), and dismissing her claims for additional indemnity benefits as a result of an injury she sustained in the course and scope of her employment. We affirm.
BACKGROUND
It is undisputed that while she was on duty as a police officer for the City, Holden sustained an injury as she placed a fifteen-pound, duty-filled back pack on the passenger’s seat of her vehicular unit. Holden’s doctor issued light-duty restrictions for Holden’s return to work commencing on May 4, 2010. The City assigned her to light-duty work, and when Holden’s doctor determined that she could no longer work in any capacity, the City issued her temporary total disability (TTD) benefits.
The parties entered into a consent judgment wherein they resolved that Holden’s status as of August 17, 2010 was TTD; the City would continue to pay Holden $577.00 per week in TTD benefits until modified by OWC; and the City did not owe Holden any penalties or attorney’s fees for TTD benefits as it had paid Holden weekly TTD benefits of $577.00 since August 17, 2010.
*730 The sole issue in this appeal is whether Holden is entitled to supplemental earnings benefits (SEB) from her employer for the time that she was under light-duty restrictions. The City filed a motion for summary judgment, and on September 1, 2011, OWC signed a judgment determining that Holden was not entitled to SEB for the period between April 23, 2010 and August 17, 2010 (the |sfour-month period).[1] A motion for reconsideration was subsequently denied and this appeal followed.[2]
DISCUSSION
On appeal, Holden contends that OWC erred in concluding that she was not entitled to SEB during the four-month period, urging that in calculating her average weekly wages for purposes of SEB, paid detail wages she would have earned but for her injury should have been included. Referring to “paid details” as “moonlighting jobs,” and admitting that the City paid her unearned wages during the four-month period, Holden urges that the City failed to include paid detail wages in calculating her total average weekly wages for purposes of SEB benefits while she worked with light-duty restrictions. Thus, she urges, the trial court erred in granting summary judgment and denying her claim for SEB from the City.
“Wages” means average weekly wage at the time of the accident. To determine an employee’s average weekly wage if the employee is paid on an hourly basis and the employee is employed for forty hours or more, her hourly wage rate is multiplied by the average actual hours worked in the four full weeks | ¿preceding the date of the accident, or forty hours, whichever is greater. See La. R.S. 23:1021(12)(a)(i). An injured employee is entitled to SEB under La. R.S. 23:1221(3) when her injury results in her inability to earn wages equal to ninety percent or more of the wages she was earning at the time of the injury. The injured employee bears the burden of proving that the injury resulted in her inability to earn that amount in any employment. Madden v. Lemle and Kelleher, LLP, 2008-1691 (La.App. 1st Cir.2/13/09), 6 So.3d 247, 250.
As the party who did not bear the burden of proof at trial on the matter, in support of entitlement to summary judgment, the City had to point out an absence of factual support for one or more elements essential to Holden’s claim. See La. C.C.P. art. 966 C(2).
*731 Through its documentary evidence, the City established that between April 23 and August 17, Holden worked approximately seventy-three light-duty days at her regular hourly wage. According to a payment history report, attached to the affidavit of Wendie McKenzie, a claims adjuster for the third-party administrator of the City’s workers’ compensation claims, Holden was not paid any TTD benefits for the periods of May 4-June 14; June 16-21; June 25-28; July 2-13; July 27-August 3; and August 11-16, 2010. Insofar as the remaining dates during that four-month period that Holden did not work, McKenzie attested, and the attached payment history report showed, that Holden was paid TTD benefits. Copies of written excuses from Holden’s doctor were also attached to McKenzie’s affidavit. McKenzie additionally attested that, based on her knowledge, Holden “was paid her pre-injury hourly wage while working limited duty with [the City].” The City, | ¿therefore, established that for those days that she was not medically excused from work, Holden earned 100% of her hourly wages with the City.
Attached to the City’s answer was Holden’s wage statement for the four weeks immediately prior to the accident. That statement shows she earned $3,462.21 during that time. This yields a weekly wage of $865.55.[3] Since claimant was paid her pre-injury salary when she worked light duty during the four-month period, obviously she did not earn less than 90% of her pre-injury wages with the City. And it is undisputed that while she was medically excused from working light duty, the City paid her the TTD rate of $577.00, which is approximately sixty-six and two-thirds her weekly wage of $865.55.[4] See La. R.S. 23:1221(1). Therefore, the City established that it had paid Holden all the wages to which she was entitled from her job as a police officer and, therefore, she was not entitled to any additional indemnity benefits from the City for her wages from paid details.
In response to the City’s showing, at the hearing on the City’s motion for summary judgment, Holden failed to offer any evidence of paid detail wages. Although at the hearing for reconsideration of OWC’s denial of SEB, Holden proffered her 2009 personal income tax statement and W-2 and/or earnings summary statements from employers, SMG, Audubon Nature Institute, Omni Royal Orleans, and Louisiana Museum Foundation, these documents contained no affidavit attestations or other certifications. OWC refused to permit Holden to ^testify about her paid detail wages and, on appeal, Holden does not complain. See Gilmore v. Wickes Lumber, 2004-2769 (La.App. 1st Cir.2/17/06), 928 So.2d 668, 673 (it is inappropriate to take testimony in open court at an OWC hearing of a motion for summary judgment).
At the reconsideration hearing, the OWC judge stated:
[T]here is a point at which you come to [OWC] and you say ... this is not ripe for summary judgment. I have some information about details that I can get and ... I’ve not been able to get it. It’s not due to lack of trying.
The point is we went forward with all that. [The City] put on [its] affidavits ... put in the payroll records ... put in the comp records but I had nothing. I had nothing on ... Holden’s end to say *732 ... there’s a document, or if it’s not here, there’s a document out there, I’m going to get it.
We find no abuse of discretion by OWC in denying admission of the documentary evidence, see Crockett v. Therral Story Well Service, Inc., 45,716 (La.App.2d Cir.1/5/11), 57 So.3d 355, 360, unit not considered, 2011-0263 (La.3/25/11), 61 So.3d 650, since the record shows that: the trial on the merits was scheduled to be heard three days later; Holden twice opposed the City’s motions for continuance of the trial on the merits; and although Holden sought a continuance of the hearing on the motion for reconsideration, her sole expressed basis for the request was because of a scheduling conflict. See Crocker v. Levy, 615 So.2d 918, 920 (La.App. 1st Cir. 1993). Thus, Holden failed to produce factual support sufficient to establish that she will be able to show she was unable to earn ninety percent of her pre-injury wages, i.e., her evidentiary burden of proof at trial, and OWC correctly granted summary judgment.
17Accordingly, OWC correctly granted summary judgment, denying SEB for the four-month period and resulting penalties and attorney’s fees.[5]
*733 IsDECREE
For these reasons, OWC’s judgment of September 1, 2011 is affirmed. Appeal costs are assessed against Malinda Holden.
AFFIRMED.

. The September 1, 2011 judgment was an amendment of a judgment signed on June 21, 2011, that had incorrectly referred to the dates for which SEB was not allowed as “April 23, 2011 and August 17, 2011.” At the time of issuance of the September 1, 2011 judgment, the parties had not entered into the consent judgment resolving all remaining issues; thus, on September 1, 2011, when OWC modified its earlier ruling, it was not a modification of a final judgment.

. The motion for reconsideration, entitled "CLAIMANT’S 1st MOTION IN LIMINE IN SUPPORT FOR RECONSIDERATION AND/OR MODIFICATION OF GRANTING SUMMARY JUDGMENTS AND ALLOWING NEW EVIDENCE BE INTRODUCED AT TRIAL REGARDING CLAIMANT’S ENTITLEMENT TO SEB,” was filed after the June 21, 2011 judgment and prior to OWC’s modification on September 1, 2011, but was not taken up until September 12, 2011, at which time the parties entered into the consent judgment in open court and signed by OWC on September 15, 2011. Holden's devolutive appeal was granted on September 15, 2011, at which time the sole remaining issue was Holden's entitlement to SEB. In the consent judgment, the parties expressly reserved to Holden the right to pursue her appeal of the SEB issue. Because all other issues have been resolved, the September 1, 2011 judgment is a final judgment properly before us in this appeal. See La. C.C.P. arts. 2083 and 2087.

. Dividing claimant’s weekly wage by her hourly rate of $17.9456, set forth in the wage statement, Holden worked approximately 48 hours a week. Thus, she was not a part-time employee as defined in La. R.S. 23:1021(11) such that the provisions regarding successive employment under La. R.S. 23:1021(12)(a)(iv)(bb) are applicable.

. Sixty-six and two-thirds percent of $865.55 yields $577.03.

. We note without holding that La. R.S. 23:1031 evidences the intent of the legislature to make an employer’s workers’ compensation liability to an injured employee depend only upon the wages which that ■ employer pays to the employee and not upon the total income of the employee. It is, therefore, evident that the only time wages from other employers are included in computing the employer's workers' compensation liability is when the employers are joint employers of the same employee. Guillory v. Interstate Hotels & Resorts, 2005-650 (La.App. 3d Cir. 12/30/05), 918 So.2d 550, 551 (citing Loft v. Louisiana Power & Light Co., 377 So.2d 1277, 1280-81 (La.App. 3d Cir. 1979), writ denied, 381 So.2d 1232 (La. 1980)); see also Gray v. Church's Fried Chicken, Inc., 504 So.2d 979, 981 (La.App. 1st Cir. 1987) (citing Lott, 377 So.2d at 1280-81 and relying on La. R.S. 23:1031, this court concluded an injured employee’s average weekly wage depended only upon the wages that the part-time employer at time of injury paid to employee, and not other part-time wages earned by employee, where the employer at time of injury and other part-time employer were not joint employers); but see La. R.S. 23:1021(12)(a)(iv)(bb) and Leger v. Calcasieu Parish School Bd„ 2009-1261 (La.App. 3d Cir.4/7/10), 34 So.3d 1042, 1044-45, writ denied, 2010-1005 (La.6/25/10), 38 So.3d 348 (ambiguous statutory provision in La. R.S. 23:1021(12)(a)(iv)(bb), which allowed two interpretations of the term "that employment” with regard to whether or not part-time employment should be included in calculating a workers’ compensation claimant’s award for benefits for an injury sustained in the course and scope of her fulltime employment, was required to be interpreted liberally in favor of claimant, and thus, claimant's wages from part-time job had to be included with her wages from her fulltime employment in determining the rate to calculate benefits arising from injury sustained in the course and scope of her fulltime employment). We, therefore, question Holden’s reliance on Jones v. Orleans Parish School Bd., 370 So.2d 677 (La.App. 4th Cir. 1979). As noted by the Guillory court:
In [Jones], our learned brethren of the Fourth Circuit appear to hold that in calculating the earning differential of an employee for purposes of fixing the extent of recovery for partial disability under [La.] R.S. 23:1221(3), one must use the sum of the salaries earned by such partially disabled employee from all employment at time of injury. Although the court in Jones was concerned with the calculation of benefits due under a different section of the [Workers'] Compensation Act, we acknowledge that the holding in Jones does lend support to the position which [claimant] advocates. We respectfully disagree with the holding in Jones ... and decline to follow [it]. In our view Louisiana’s [workers'] compensation law clearly and explicitly limits the employer’s liability for ... compensation benefits to a statutorily fixed percentage of the "average weekly wage” paid by the responsible employer to the employee (subject to minimum and maximum benefits). In our opinion, although our law, as presently constituted, may in certain isolated cases, such as *733 the instant case, not fully provide for loss of earning capacity, to fix an employer’s liability for payment of benefits on all income of the employee, regardless of the source, would be patently unfair to the employer responsible for the payment of benefits.
918 So.2d at 551.
Since we have concluded that Holden failed to tender the requisite evidence to squarely bring the issue of whether the City was liable for SEB as a result of average weekly wages calculated on wages earned from successive employment, the issue is not properly before us at this time.