# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 22-572

BYKIIA CEASER

VERSUS

LAKE CHARLES CARE CENTER

**********

ON APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 3
PARISH OF CALCASIEU, NO. 19-01058
JONATHAN W. BROWN, WORKERS' COMPENSATION JUDGE

**********

## JONATHAN W. PERRY
## JUDGE

**********

Court composed of D. Kent Savoie, Jonathan W. Perry, and Wilbur L. Stiles, Judges.

**AFFIRMED AS AMENDED.**

**Corey M. Meaux**
**Parker & Landry, LLC**
**4023 Ambassador Caffery Pkwy., Ste. 320**
**Lafayette, Louisiana  70503**
**(337) 362-1603**
**COUNSEL FOR EMPLOYER/APPELLANT:**
    **Lake Charles Care Center**


**Tina L. Wilson**
**Cox, Cox, Filo, Camel & Wilson, LLC**
**723 Broad Street**
**Lake Charles, Louisiana  70601**
**(337) 436-6611**
**COUNSEL FOR CLAIMANT/APPELLEE:**
    **Bykiia Ceaser**

**PERRY, Judge.**

In this workers' compensation case, the employer, Lake Charles Care Center ("LCCC"), appeals the workers' compensation judgment awarding the claimant, Bykiia Ceaser ("Ms. Ceaser") medical expenses, indemnity benefits, a penalty, and attorney fees. For the following reasons, the judgment of the Office of Workers' Compensation is affirmed as amended.

## FACTS AND PROCEDURAL HISTORY

Ms. Ceaser was employed as a licensed practical nurse with LCCC when she was involved in a rear-end collision on January 23, 2019, while in the course and scope of her employment. She allegedly injured her neck and back as a result of the accident.

On February 13, 2019, Ms. Ceaser filed a Form 1008 Disputed Claim for Compensation with the Office of Workers' Compensation. Therein, Ms. Ceaser sought indemnity and medical benefits, penalties, and attorney fees for LCCC's denial of her workers' compensation claim.

In its March 2019 Answer, LCCC denied Ms. Ceaser's entitlement to workers' compensation benefits, disputed her disability, and denied liability for penalties and attorney fees for its handling of Ms. Ceaser's claim. In an Amended Answer filed in August 2019, LCCC admitted Ms. Ceaser was within the course and scope of her employment when the accident herein occurred. LCCC also alleged Ms. Ceaser committed fraud under La.R.S. 23:1208.1 by failing to disclose her pre-employment history of treatment for a back injury.

Trial was held on October 11, 2021. After taking the matter under advisement, the workers' compensation judge ("WCJ"): (1) found Ms. Ceaser's injuries were compensable injuries related to the accident at issue herein; (2) ordered LCCC to authorize Ms. Ceaser's medical treatment, pay any outstanding medical expenses,

and reimburse Ms. Ceaser for any out-of-pocket accident-related medical expenses; (3) ordered LCCC to pay Ms. Ceaser "indemnity benefits along with back due indemnity benefits from February 7, 2019 to present at the maximum compensation rate (which includes her part-time employment with Grand Cove Nursing Home)[;]" (4) awarded a $2,000.00 penalty for LCCC's failure to pay indemnity benefits; (5) awarded Ms. Ceaser an attorney fee of $4,500.00; and (6) denied Ms. Ceaser's claim for penalties and attorney fees for LCCC's failure to pay medical benefits.[1]

Soon after rendering judgment, the WCJ issued written reasons explaining its ruling.[2] On the issue of indemnity benefits, the WCJ noted "it is undisputed Ms. Ceaser was employed as a Licensed Practical Nurse (LPN) with LCCC as a full-time employee." It also quoted La.R.S. 23:1021(13)(a)(iv) and referred to this court's decision in *Leger v. Calcasieu Parish School Bd.*, 09-1261 (La.App. 3 Cir. 4/7/10), 34 So.3d 1042, *writ denied*, 10-1005 (La. 6/25/10), 38 So.3d 348, in support of its ruling that Ms. Ceaser is entitled to have the wages from her part-time employment included in the calculation of her workers' compensation benefits. The WCJ concluded:

> a ruling that excludes the part-time wages of a [sic] Ms. Ceaser would put an additional financial burden on her as a result of the current accident. As such, LCCC shall pay any indemnity benefits, including the wages from Ms. Ceaser's employment at Grand Cove Nursing Home in the calculation, up to the maximum benefit allowed.

Following a motion for new trial filed by LCCC,[3] the WCJ issued an amended judgment on June 9, 2022. Therein, the WCJ's calculation of indemnity benefits owed to Ms. Ceaser was explained as follows:

---

[1] The judgment was signed March 2, 2022.

[2] The WCJ's written reasons were dated March 7, 2022.

[3] LCCC asked for clarification on the calculation of Ms. Ceaser's indemnity award since neither the judgment nor the WCJ's written reasons specified an actual amount. LCCC's motion also noted the judgment's failure to mention the denial of its fraud claim against Ms. Ceaser.

Ms. Ceaser earned $18.60 per hour at LCCC for an average weekly wage of $744.00. Additionally, at Grand Cove, Ms. Ceaser worked for an average weekly wage of $608.00 ($19/hr x 32 hrs weekly). This exceeds the statutory maximum and as a result, LCCC shall commence payment of indemnity benefits along with back due indemnity benefits from February 7, 2019 to present at the maximum compensation rate of $665.00 weekly.

Also, LCCC's claim against Ms. Ceaser for fraud pursuant to La.R.S. 23:1208.1 was denied.[4]

## APPELLANT'S ASSIGNMENTS OF ERROR

LCCC filed a suspensive appeal contending the WCJ: (1) committed manifest error in concluding Ms. Ceaser's current complaints are causally related to the accident at issue herein; (2) committed legal error by improperly calculating Ms. Ceaser's average weekly wage ("AWW"); and (3) committed manifest error in awarding penalties and attorney fees.

## APPELLANT'S ARGUMENTS

LCCC contends the accident at issue herein did not cause Ms. Ceaser's injuries. It alleges Ms. Ceaser's injuries are attributable to either her prior workers' compensation claim or her preexisting medical conditions, such as fibromyalgia and diabetes.

LCCC asserts Ms. Ceaser failed to prove actual wages or hours worked at Grand Cove Nursing Home ("Grand Cove") at the time of her accident. It argues the WCJ legally erred in accepting Ms. Ceaser's self-serving testimony, with no other corroborating documentation, at trial to establish her AWW. Alternatively, LCCC asserts the WCJ legally erred by including part-time wages in calculating Ms. Ceaser's AWW. It argues the correct calculation of Ms. Ceaser's AWW, based

---

[4] LCCC has not assigned as error or argued in brief that the WCJ erred in denying its claim Ms. Ceaser committed fraud by failing to disclose her pre-employment history of treatment for a back injury.

on forty hours earning $18.60, is $744.00 with a corresponding compensation rate of $496.00 per week.[5]

Lastly, LCCC argues the WCJ erred in awarding Ms. Ceaser a penalty and attorney fees for its failure to pay indemnity benefits. It alleges the basis of its denial was its reliance upon conflicting medical opinions on whether Ms. Ceaser's complaints were causally related to the accident at issue herein versus preexisting medical issues. Thus, LCCC argues the WCJ erred in finding it was arbitrary and capricious in its denial thereof.

## APPELLEE'S POSITION

Ms. Ceaser contends the WCJ's determinations concerning causation as well as whether the refusal to pay workers' compensation benefits warrants the imposition of penalties and attorney fees are factual determinations which are subject to review for manifest, or clear, error. She asserts the record in this matter shows the WCJ's factual determinations were reasonable and, thus, not clearly wrong, or manifestly erroneous.

Ms. Ceaser asserts the WCJ's acceptance of her testimony as credible proof of wages earned as a part-time employee at Grand Cove is, likewise, a factual determination subject to manifest error review. She argues LCCC offered no countervailing evidence to dispute her testimony; thus, the WCJ's reliance and acceptance of her testimony cannot be clearly wrong or manifestly erroneous.

Ms. Ceaser further argues the WCJ correctly used wages from both the job of injury and her part-time job at Grand Cove in calculating her AWW and corresponding indemnity rate. She contends this court's holding in *Leger*, 34 So.3d 1042, supports the WCJ's decision.

---

[5] An injured employee's workers' compensation benefit rate is determined by calculating sixty-six and two-thirds percent of that employee's wages, subject to a maximum and minimum rate set by law. *See* La.R.S. 23:1221 and La.R.S. 23:1202.

## STANDARD OF REVIEW

Appellate courts review factual determinations in workers' compensation cases using the manifest error or clearly wrong standard of review. *Banks v. Indus. Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/97), 696 So.2d 551. In applying the manifest error–clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. *Id.*

> Nevertheless, "when legal error interdicts the fact-finding process in a workers' compensation case, the manifest error or clearly wrong standard of review no longer applies and *de novo* review of the matter is required." *Gaines v. Home Care Solutions, LLC*, 15-895, p. 9 (La.App. 4 Cir. 4/6/16), 192 So.3d 794, 801 (citing *Marti v. City of New Orleans*, 12-1514 (La.App. 4 Cir. 4/10/13), 115 So.3d 541), *writ denied*, 16-847 (La. 6/17/16), 192 So.3d 765. "'Likewise, interpretation of statutes pertaining to workers' compensation is a question of law and warrants *de novo* review to determine if the ruling was legally correct.'" *Id.* (quoting *Tulane Univ. Hosp. & Clinic v. Lockheed Martin Corp.*, 11-179, p. 3 (La.App. 4 Cir. 6/29/11), 70 So.3d 988, 990).

*Johnson v. Office of Tourism*, 19-853, p. 5 (La.App. 3 Cir. 5/6/20), 297 So.3d 1070, 1073-74.

## LAW AND DISCUSSION

*Causation*

In a workers' compensation action, the employee has the burden of establishing a work accident caused injury by a preponderance of the evidence. *Bruno v. Harbert Int'l Inc.*, 593 So.2d 357 (La.1992). In *Montou v. Boise Cascade Co.*, 14-1248, p. 5 (La.App. 3 Cir. 4/1/15), 160 So.3d 637, 642, *writ denied*, 15-870 (La. 6/5/15), 171 So.3d 952, this court stated, "The employee must show that the accident 'directly produc[ed] at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.' La.R.S. 23:1021(1)." In addition, "an employer takes his employee as he finds him,

5

a preexisting condition does not prevent recovery through workers' compensation." *Tate v. Cabot Corp.*, 01-1652, p. 5 (La.App. 3 Cir. 7/3/02), 824 So.2d 456, 461, *writ denied*, 02-2150 (La. 11/22/02), 829 So.2d 1044.

At trial, Ms. Ceaser acknowledged having preexisting injuries from a prior work accident with a different employer in 2016 and being treated by Dr. Patrick Juneau. At the time, Dr. Juneau ordered MRIs of the cervical and lumbar spine, noting a disc protrusion at C5-6 and C6-7. Ms. Ceaser had cervical steroid injections with no relief. Dr. Juneau recommended an anterior cervical discectomy and fusion at C5-6 and C6-7. Ms. Ceaser, however, did not undergo the cervical surgery. She further testified that she had not sought any medical treatment for over a year for her previous work accident, which occurred in 2016.

On the evening of her motor vehicle accident on January 23, 2019, Ms. Ceaser sought treatment at the emergency room at Lake Area Medical Center for spasms in her lower back, numbness in her legs, and tightness in her neck. She next sought treatment on February 4, 2019, with Dr. Paul E. Fenn, Jr., for neck and lower back pain.

Dr. Fenn, whose deposition and medical records were entered into evidence at trial, noted his first examination revealed Ms. Ceaser had neck pain with stiffness and inflammation, left worse than right, and low back pain with generalized radiculopathy down both lower extremities. Dr. Fenn initially limited Ms. Ceaser to light duty work, and on February 7, 2019, he restricted Ms. Ceaser from all work activities. Dr. Fenn continued to treat Ms. Ceaser until July 2019, after which her care was transferred to Dr. Juneau.

Dr. Juneau testified that he first treated Ms. Ceaser for complaints of neck and back pain in July 2017. He eventually recommended anterior cervical discectomy with instrumented fusion at C5-6 and C6-7 on October 17, 2017.

Following Ms. Ceaser's accident in January 2019, Dr. Juneau noted Ms. Ceaser presented with symptoms of bilateral cervical radiculomyelopathy, which he testified were not present when he last saw her on November 16, 2017. Dr. Juneau also noted the prior disc protrusion at the C5-6 level appeared larger on the post-accident MRI as compared to the pre-accident MRI. Because of Ms. Ceaser's symptoms, Dr. Juneau recommended cervical discectomy and fusion at C5-6 and C6-7. Dr. Juneau acknowledged he never withdrew his prior surgery recommendation, made in 2017; however, he testified Ms. Ceaser's preexisting condition was such that it was more susceptible of re-injury and created a greater level of disability with a subsequent accident.

In addition to the depositions and medical records of Drs. Juneau and Fenn, the parties jointly offered into evidence at trial the deposition of Ms. Ceaser's OB/GYN, Dr. Scott Bergstedt; the second medical opinion report of Dr. John R. Budden; the report of independent medical examiner, Dr. David Drez; and medical records of Dr. Clark Gunderson, who Ms. Ceaser saw for an independent medical examination associated with her prior workers' compensation claim.[6]

Dr. Bergstedt saw Ms. Ceaser on January 14, 2019, approximately one week prior to the accident at issue herein. Ms. Ceaser reported back pain at this appointment; however, the treatment of Dr. Bergstedt focused solely on her gynecological care.

Dr. Budden examined Ms. Ceaser for a second medical opinion on September 18, 2019. It was his opinion that Ms. Ceaser's symptoms from the accident were most likely a cervical and lumbar strain, which should have been resolved. Dr. Budden attributed Ms. Ceaser's symptoms to fibromyalgia.

---

[6] Dr. Gunderson admitted Ms. Ceaser had disc protrusions at C5-6 and C6-7 prior to the January 23, 2019 accident, but he related her complaints to fibromyalgia.

7

We are mindful that when the WCJ is presented multiple opinions from medical professionals, the "decision to credit one physician's testimony over another's is a credibility determination which, in the absence of manifest error or clear wrongness, cannot be reversed on appeal." *Rochon v. Iberia Parish Sch. Bd.*, 95-1370, p. 7 (La.App. 3 Cir. 3/27/96), 673 So.2d 239, 244 (rehearing granted for other reasons).

The WCJ's written reasons for ruling reveal his analysis of the evidence relevant to causation. He wrote, in part:

> The defendants contend the injuries are attributable to Ms. Ceaser's prior workers' compensation claim and injuries. As evidence of this, they present the prior recommendation of surgery by Dr. Juneau. Ms. Ceaser decided against this recommended surgery and testifies that she was afraid to have the surgery. The defendants also rely on Dr. Juneau's testimony that the injuries complained of would not have healed on its own. The contention is that no matter what came after the denial of the surgery, the injury would always remain. Defendants go further in asserting that awarding Ms. Ceaser medical treatment for the same recommended surgery, would give her a "second bite at the apple," since she has already settled her previous claim (and presumptively the settlement took the recommended surgery into account).
>
> While these concerns are warranted and justified, the Court was particularly persuaded by the testimony of Ms. Ceaser and Dr. Juneau in which the prior injury and symptoms were explained. First, Ms. Ceaser testified she had not sought any medical treatment for over a year for the previous work accident. This testimony is corroborated by the medical records and Dr. Juneau's testimony that the injury had become "stable", and the current motor vehicle accident caused a "destabilization["]. This could, and had resulted in the new pain that caused Ms. Ceaser's behavior to change. This had also led to Ms. Ceaser seeking new treatment for the pain.
>
> The defendants also rely on the testimony of Dr. Budden. He opines the current complaints are the result of Ms. Ceaser's fibromyalgia and diabetes. He believes these diseases would cause the same complaints and would get worse as they progress over time. In reviewing the medical records, he also believes the records do not indicate an injury as a result of a motor vehicle accident.
>
> The Court is again persuaded by Dr. Juneau's testimony. Specifically, he explains Ms. Ceaser's diseases could "amplify" the symptoms she feels when compared to the average patient. It should

8

also be noted that although he does not find causality, Dr. Budden states there was no exaggeration of complaints by Ms. Ceaser. After her testimony, the Court finds the same. Ms. Ceaser was exceptionally forthcoming with her testimony about her disorders, and current conditions. She testified that her prior workers' compensation claim was handled succinctly and when she felt healthy enough, she had returned to work -- at two jobs. This behavior is an example of the type of conduct the Workers' Compensation Act encourages. It corroborates what the Court gleaned from Ms. Ceaser's testimony and solidifies her credibility. Ms. Ceaser testified, that prior to the January 23, 2019 accident, she was able to work without any physical limitations. She continued that although her pain from the prior existing injuries never fully went away, she had learned to deal with it. The same was said about her diabetes and fibromyalgia. She explained how she dealt with "flare-ups", and how she made adjustments to her diet and lifestyle to manage the difficulties. Additionally, Ms. Ceaser portrayed what her life was like prior to the January 2019 accident and the physical limitations she encountered after the accident.

This testimony, along with the testimony of the doctors, and a review of the medical records evidence the fact that at the very least the accident herein aggravated Ms. Ceaser's prior back injuries. For these reasons, the Court believes the claimant has proven by a preponderance of the evidence that the injuries complained of herein are causally related to the motor vehicle accident which occurred in the course and scope of Ms. Ceaser's employment on January 23, 2019. As a result, the claim is compensable.

Our review of the record supports this determination, and we find no manifest error in the WCJ's decision to give more weight to Dr. Juneau's opinion or in the ultimate determination that the accident at issue herein caused Ms. Ceaser's injuries. Finding the factual determinations to be reasonable in light of the record reviewed in its entirety, we cannot say the WCJ was clearly wrong in finding the accident at issue herein caused Ms. Ceaser's injuries.

*Average Weekly Wage*

Louisiana Revised Statutes 23:1021 provides, in part:

(13) "Wages" means average weekly wage at the time of accident. The average weekly wage shall be determined as follows:

(a) Hourly wages.

(i) If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly

9

wage rate multiplied by the average actual hours worked in the full four weeks preceding the date of the accident or forty hours, whichever is greater; or

. . . .

(iv) A part-time employee, as defined in R.S. 23:1021(9)[7] and who is employed by two or more different employers in two or more successive employments, shall be entitled to receive benefits as follows:

(aa) If an employee is employed by two or more different employers in two or more successive employments and the employee incurs a compensable injury under the provisions of this Chapter in one of the employments, the employer in whose service the employee was injured shall pay the benefits due the employee as provided in this Chapter.

(bb) If the employee is a part-time employee in one of the successive employments, is injured in that employment, but as a result of the injury also incurs loss of income from other successive employments, that employee shall be entitled to benefits computed by determining wages under the provisions of this Subsection using his hourly rate in employment at the time of injury and using the total hours worked for all employers of the part-time employee, but not to exceed his average, actual weekly hours worked or forty hours weekly, whichever is less.

It is undisputed that LCCC employed Ms. Ceaser full-time at a pay rate of $18.60 per hour. At trial, Ms. Ceaser testified that in addition to being employed full-time at LCCC, she was also employed part-time at Grand Cove, working weekend double shifts, equaling approximately thirty-two hours, earning $19.25 per

---

[7] The definition of "part-time employee" is provided by La.R.S. 23:1021(11), not La.R.S. 23:1021(9). Furthermore, a "part-time employee" is defined as "an employee who as a condition of his hiring knowingly accepts employment that (a) customarily provides for less than forty hours per work week, and (b) that is classified by the employer as a part-time position." La.R.S. 23:1021(11).

hour.  Consequently, the WCJ included wages from both LCCC and Grand Cove in the calculation of Ms. Ceaser's workers' compensation indemnity award.[8]  LCCC presents a twofold objection to the WCJ's calculation of Ms. Ceaser's AWW.

Firstly, LCCC argues the WCJ's calculation of Ms. Ceaser's AWW improperly included unproven income from Grand Cove.  LCCC submits there is no evidence in the record that she actually worked at Grand Cove at the time of the accident at issue herein.  LCCC points to discovery responses submitted into evidence at trial wherein Ms. Ceaser listed Grand Cove as a previous employer but stated she left Grand Cove because she "wanted to do something different."

LCCC contends that this court's decision in *Burns v. St. Frances Cabrini Hosp.*, 02-518 (La.App. 3 Cir. 10/30/02), 830 So.2d 572, indicates that testimony and corroborating evidence should have been introduced at trial to establish Ms. Ceaser's AWW in accordance with La.R.S. 23:1317(A), which provides, in pertinent part:

> [A]ll findings of fact must be based upon competent evidence and all compensation payments provided for in this Chapter shall mean and be defined to be for only such injuries as are proven by competent evidence, or for which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself.

LCCC relies upon the following expression by this court in *Burns*, 830 So.2d at 574, to support its argument that testimony and corroborating evidence should have been introduced to establish Ms. Ceaser's AWW at trial:

> To establish his AWW, Mr. Burns testified and introduced documents prepared by and provided to him by Cabrini, including check stubs, his 1999 Employee Performance Review, a 1995 memorandum to employees regarding paid time off and extended sick leave, and a 1998 memorandum regarding payment for unused sick leave.  Cabrini did not object to the introduction of the documents and does not dispute the contents of the documents.  We have reviewed

---

[8] Despite Ms. Ceaser's testimony, the WCJ's judgment noted her part-time pay rate at Grand Cove as $19.00 per hour.

11

Mr. Burns' testimony and the documents introduced by him and find the evidence competent and sufficient to substantiate the findings of the WCJ as required by La.R.S. 23:1317(A).

Ms. Ceaser refutes LCCC's reliance upon *Burns*, 830 So.2d 572, as supportive of its argument that Ms. Ceaser's testimony regarding her wages must be accompanied by corroborating documentary evidence. She argues there was no such requirement pronounced by this court in *Burns*, 830 So.2d 572, where the claimant testified and introduced documents, including check stubs, regarding his wages. Though the trial court reviewed and relied upon this evidence, Ms. Ceaser asserts there was no statement by this court that both were necessary to prove the claimant's wages. Thus, Ms. Ceaser asserts LCCC's reliance upon *Burns*, 830 So.2d 572, is misplaced.

Secondly, and only alternatively should we accept Ms. Ceaser's testimony as sufficient proof of her employment with and wages from Grand Cove, LCCC contends the WCJ legally erred when it calculated Ms. Ceaser's AWW. It argues the calculation of Ms. Ceaser's AWW excludes her part-time wages.

Ms. Ceaser contends the WCJ correctly concluded that the AWW calculation should include her part-time wages. She argues this court's holding in *Leger*, 34 So.3d 1042, clearly supports the WCJ's decision.

In *Leger*, 34 So.3d 1042, the claimant was a school bus driver injured in a head-on collision who also had a job at a fast food restaurant. The school board paid the claimant workers' compensation benefits based on her AWW derived from her income as a school bus driver—annual salary, supplemental payments, pay for field trips, et cetera—received during the fifty-two weeks prior to the accident. These totals were added and then divided by fifty-two to determine the claimant's average weekly salary and her resulting compensation rate. The claimant, however, believed her part-time wages should have been included in the calculation that determined

12

her workers' compensation award. The parties' arguments focused on La.R.S. 23:1021(13)(a)(iv)(bb)[9] and its meaning of the phrase "that employment." *Id*. at 1045. The employer argued the phrase should be interpreted as referring to part-time employment only, while the claimant argued it referred to any of the successive employments. This court affirmed the trial court's finding that an ambiguity existed in La.R.S. 23:1021(13)(a)(iv)(bb), thereby allowing a liberal interpretation which favored the claimant and resulted in her part-time wages being included in the calculation of her AWW and corresponding indemnity rate.

We, however, find *Guillory v. Interstate Hotels & Resorts*, 05-650 (La.App. 3 Cir. 12/30/05), 918 So.2d 550, more analogous to the present matter. Therein, the claimant had both a full-time job and a part-time job. He was injured while in the course and scope of his full-time job, and his disability made him unable to work at either job. The claimant was paid indemnity benefits based on his income at his full-time job—hourly rate multiplied by forty hours. The claimant, however, believed his part-time wages should have been included in the calculation that determined his workers' compensation award. The trial court disagreed; thus, the question posed on appeal was "whether the calculation of the average weekly wage of the claimant, who was injured in the course and scope of his full-time employment, should include wages received from his part-time employer." *Id*. This court affirmed the trial court's exclusion of the claimant's part-time wages in the calculation of his AWW and corresponding indemnity rate.

In rejecting the claimant's contention in *Guillory*, 918 So.2d at 551-52 (emphasis added), this court explained:

---

[9] Louisiana Revised Statutes 23:1021(12) was revised by 2013 La. Acts No. 337, § 1, such that it was renumbered as La.R.S. 23:1021(13). When *Leger*, 34 So.2d 1042, was decided, La.R.S. 23:1021(13)(a)(iv)(bb) appeared as La.R.S. 23:1021(12)(a)(iv)(bb).

This court addressed a similar circumstance in *Lott v. Louisiana Power & Light Co.*, 377 So.2d 1277, 1280-81 (La.App. 3 Cir. 1979), [*writ denied*, 381 So.2d 1232 (La. 1980),] stating:

> LSA-R.S. 23:1031 evidences the intent of the legislature to make an employer's workmen's compensation liability to an injured employee depend only upon the wages which that employer pays to the employee and not upon the total income of the employee.
>
> . . . .
>
> It is evident, therefore, that the only time wages from other employers are included in computing the employer's workmen's compensation liability is when the employers are joint employers of the same employee. That is not the case here. . . .
>
> Able counsel for plaintiff has additionally referred us to the recent case of *Jones v. Orleans Parish School Bd.*[, 370 So.2d 677 (La.App. 4th Cir. 1979)], *supra.* In that case, our learned brethren of the Fourth Circuit appear to hold that in calculating the earning differential of an employee for purposes of fixing the extent of recovery for partial disability under LSA-R.S. 23:1221(3), one must use the sum of the salaries earned by such partially disabled employee from all employment at time of injury. Although the court in Jones was concerned with the calculation of benefits due under a different section of the Workmen's Compensation Act, we acknowledge that the holding in *Jones* does lend support to the position which plaintiff advocates. We respectfully disagree with the holding in *Jones, supra*, and decline to follow same. In our view Louisiana's workmen's compensation law clearly and explicitly limits the employer's liability for workmen's compensation benefits to a statutorily fixed percentage of the "average weekly wage" paid by the responsible employer to the employee (subject to minimum and maximum benefits). In our opinion, although our law, as presently constituted, may in certain isolated cases, such as the instant case, not fully provide for loss of earning capacity, to fix an employer's liability for payment of benefits on all income of the employee, regardless of the source, would be patently unfair to the employer responsible for the payment of benefits.

Guillory argues that the legislature's 1991 amendment of La.R.S. 23:1021(12) makes *Lott* no longer relevant. . . .

. . . .

The amendment clearly carves out an exception to *Lott* by allowing a part-time employee injured at his part-time employment to cumulate wages from another unrelated part-time or full-time employer. **However, the statute specifically limits the number of hours to be used in the calculation to forty**. That limitation squarely addresses the issue before us. Guillory was injured at his full-time job and, therefore, any cumulation with an unrelated employer would take him beyond the forty-hour limit.

In this case, we find the WCJ legally erred in awarding Ms. Ceaser indemnity benefits at the rate of $665.00 weekly. Under La.R.S. 23:1021(13)(a), Ms. Ceaser is limited to no more than forty hours. *See Guillory*, 918 So.2d 550. In view of it being undisputed that LCCC employed Ms. Ceaser full-time at a pay rate of $18.60 per hour, the amended judgment of the WCJ issued on June 9, 2022, shall be amended to reflect:

> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED; Ms. Ceaser earned $18.60 per hour at LCCC for an average weekly wage of $744.00. LCCC shall commence payment of indemnity benefits along with back due indemnity benefits from February 7, 2019, to present at the maximum compensation rate of $496.00 weekly.

Consequently, having found merit in LCCC's argument concerning the WCJ's calculation of Ms. Ceaser's AWW, we need not consider LCCC's argument relative to whether Ms. Ceaser proved actual wages or hours worked at Grand Cove.

*Penalties and Attorney Fees*

The remaining assignment of error presents the issue of whether a penalty and attorney fees should have been awarded to Ms. Ceaser for LCCC's failure to pay indemnity benefits. The WCJ awarded a single $2,000.00 penalty and attorney fees in the amount of $4,500.00.

In brief, LCCC's arguments primarily concern whether its denial of Ms. Ceaser's claim for indemnity benefits should have been viewed as being arbitrary and capricious by the WCJ. A review of the judgment herein reveals the WCJ found LCCC was "arbitrary and capricious in its denial of indemnity benefits."

15

The record reveals Ms. Ceaser has never received any indemnity payments. In view of this fact, we find the claim before us concerns a "failure to provide payment" under La.R.S. 23:1201(F), which necessarily encompasses the "reasonably controverted" standard of La.R.S. 23:1201(F)(2). The WCJ's assessment of a penalty and attorney fees were, however, based on his use of the "arbitrary, capricious, or without probable cause" standard of La.R.S. 23:1201(I), which is used when an employer "discontinues payment of claims[.]" Therefore, we find the WCJ applied the wrong legal standard in this case.

Under La.R.S. 23:1201(F)(2):

[F]ailure to provide payment in accordance with this Section . . . shall result in the assessment of a penalty . . . together with reasonable attorney fees for each disputed claim . . . . Penalties shall be assessed in the following manner:

. . . .

(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.

In *Gradney v. La. Comm. Laundry*, 09-1465, p. 6 (La.App. 3 Cir. 5/12/10), 38 So.3d 1115, 1120, this court noted:

Penalties and attorney fees are awarded when an employer or his insurer fails to timely pay benefits owed to an employee, unless the claim for benefits has been reasonably controverted or the nonpayment was a result of conditions over which the employer or his insurer had no control. La.R.S. 23:1201(F); *Brown v. Texas-LA Cartage, Inc.*, 98-1063 (La.12/1/98), 721 So.2d 885.

An employee's right to benefits will be considered to be reasonably controverted when the employer or his insurer had "sufficient factual information to reasonably counter the factual information presented by the claimant." *Thibodeaux v. L.S. Womack, Inc.*, 94-1375, p. 2 (La.App. 3 Cir. 4/5/95), 653 So.2d 123, 125.

LCCC alleges it denied Ms. Ceaser's indemnity claim because divergent medical opinions made it doubt the accident herein caused Ms. Ceaser's present

16

medical complaints. Pointing to the medical records relevant to the issue of causation, LCCC argues its reliance on the opinions of Drs. Bergstedt, Drez, Budden, and Gunderson made its denial of indemnity benefits reasonable and does not entitle Ms. Ceaser to penalties and attorney fees.

During closing arguments at trial, counsel for Ms. Ceaser pointed to notes of Connie Freese, Claims Adjuster for Risk Management, which were entered into evidence as Joint Exhibit 15. Ms. Freese did not testify at trial, but her notes dated February 4, 2019, indicate the claim was not deemed compensable because LCCC did not view Ms. Ceaser's motor vehicle accident as being work related.

Our review of the record reveals a notice of controversion dated February 12, 2019, was sent to Ms. Ceaser; however, it contains no explanation.[10] On March 7, 2019, LCCC filed an answer denying Ms. Ceaser's entitlement to workers' compensation benefits. On August 7, 2019, LCCC filed an amended answer admitting Ms. Ceaser was injured in the course and scope of her employer. Despite this, LCCC did not make any indemnity payments.

We find the record furnishes no basis for this court to conclude LCCC reasonably controverted Ms. Ceaser's claim for indemnity benefits. Thus, we decline to vacate the penalty and attorney fees which were awarded to Ms. Ceaser.

## DECREE

For the foregoing reasons, the judgment appealed from is affirmed as amended. The costs of this appeal are assessed against Employer/Appellant, Lake Charles Care Center.

**AFFIRMED AS AMENDED.**

---

[10] This notice is also contained in Joint Exhibit 15.

17